Borough of Ridgway *v.* Sarah M. Grant, Ella G. Powell, E. C. Powell and Matthew Rutigliano. Judith M. Stager and Gary Matheson, Appellants.

Argued November 19, 1980, before Judges BLATT, CRAIG and MACPHAIL, sitting as a panel of three.

*Joel P. Aaronson*, with him *John M. Feeney, Baskin and Sears*, for appellants.

*Norbert J. Pontzer, Pontzer & Pontzer*, for appellee.

OPINION BY JUDGE MacPHAIL, February 4, 1981:

This is an appeal by Judith M. Stager and Gary Matheson (Appellants)[1] from the order of the Court of Common Pleas of the 59th Judicial District, Elk County Branch entered September 13, 1979, in a declaratory judgment action which ordered and decreed that the deed of Sarah M. Grant, Ella G. Powell, and E. C. Powell (Grantors) to the Borough of Ridgway (Borough) does not prohibit the construction of a fire engine house[2] in Grant Park.

The tract of land now known as Grant Park was conveyed to the Borough by a deed dated April 16, 1921 and recorded May 10, 1921. The grantee clause in the deed reads as follows:

> WITNESSETH, that in consideration of One dollar ($1.00) in hand paid, the receipt whereof is hereby acknowledged, the said grantors do hereby grant and convey to the said grantee, for use as a public municipal park to be known as GRANT PARK,
>
> ALL that certain piece, parcel or tract of land....

The tract has been actively used in its entirety as a public municipal park since the time of the conveyance, almost 60 years ago.

---

[1] Although they were not identified as respondents in the Borough's petition for a declaratory judgment, Appellant Stager was the spokesperson for and Appellant Matheson was a member of the group of citizens who opposed the construction of the fire engine house. Matthew Rutigliano was also a member of this group but died prior to the lower court's hearing.

[2] Throughout the petition for declaratory judgment in the briefs and at argument, the proposed building is referred to as a "fire station." For purposes of clarity, we prefer to refer to the building as a fire engine house because the 40 x 60 foot building would be used to house fire truck equipment although it would also have a meeting room of unspecified dimensions and restrooms available to members of the public using the park facilities.

On May 23, 1979, the Borough petitioned the lower court pursuant to the provisions of the Declaratory Judgments Act,[3] to construe the deed language quoted above in such a manner as to permit the construction of a fire engine house on a designated site located within the boundaries of Grant Park. Named as respondents were the Grantors and Matthew Rutigliano, a resident of the Borough. The Borough also gave notice of the impending proceeding to the Attorney General of the Commonwealth of Pennsylvania.

A hearing was held on August 31, 1979. An order permitting the construction was issued on September 13, 1979 from which order appellants appeal to this Court.[4]

Appellants argue that the words "for use as a public municipal park to be known as Grant Park" restricts the use of the property to park purposes only. The Borough, on the other hand, argues that, since there are no provisions in the deed for forfeiture or termination of the estate in the event the property is used for non-park purposes, the Borough has a fee simple absolute deed and can, therefore, construct the fire engine house where it desires to do so. We must agree that the Grantors' entire interest in the real estate described in the subject deed was conveyed to the Borough. In the absence of words of forfeiture, reversion, or limitation, the language "for use as a public

---

[3] Petitioners incorrectly cited the Act of June 18, 1923, P.L. 840, *formerly* 12 P.S. §841 *et seq.* That Act was repealed by Section 2a of the Judiciary Act Repealer Act, Act of April 28, 1978, P.L. 202. The Act under which Petitioners must now proceed is found in 42 Pa. C. S. §7531 *et seq.* This change does not affect the outcome of this case.

[4] The Borough filed a motion to quash the instant appeal on the ground that the present Appellants lacked standing. That motion was withdrawn by the Borough at oral argument.

municipal park to be known as Grant Park" is merely a statement of purpose which would not debase or limit a fee. *Abel v. Girard Trust Company*, 365 Pa. 34, 73 A.2d 682 (1950).

That the Grantors' entire interest was conveyed to the Borough, however, is not dispositive of the issue of whether a portion of Grant Park may be used for a fire engine house. While the plain language of the deed does convey the entire interest of the Grantors, it also plainly indicates the Grantors' intent to dedicate the real estate conveyed for a specific public purpose. Dedication results when a landowner offers property for public use and it is accepted by the public. P.L.E. *Dedication* §2. Here, the Borough not only accepted the deed, but has equipped, maintained, and improved the land as a park for almost 60 years.[5] There can be no doubt that the Borough has manifested a clear and unequivocal intention to devote Grant Park to park purposes only. The public, in turn, has used the land as a park solely for park purposes for the same number of years. Clearly, there has been an intent to dedicate and an acceptance thereof.

In *Abel v. Girard Trust Company, supra,* the habendum clause reads: "For the exclusive use of the grantee hereof, its successors and assigns, of said premises, as and for a public park, for the use and benefit of the inhabitants of Borough of Bangor, aforesaid, and to and for no other use or purpose whatsoever." Our Supreme Court held in that case that although the deed conveyed a fee simple title, it also created a charitable trust, the purposes of which could not be changed by the trustee unless such purposes could no longer be carried out. Such, of course,

---

[5] Indeed, the Borough had, in fact, been negotiating with and had apparently received a commitment from the Pennsylvania Department of Community Affairs (DCA) for a grant in excess of $100,000 to refurbish the park and playground facilities.

is not the situation here. In *Easton v. Koch*, 152 Pa. Superior Ct. 327, 339, 31 A.2d 747, 752 (1943), Judge Rhodes writing for a unanimous court held: "A municipality can not revoke or destroy, after dedication and acceptance, the right of the public to the exclusive use of the property *for the purpose designated.*" (Emphasis added.) Finally, on this point, the Act of December 15, 1959, P.L. 1772, 53 P.S. §3381 *et seq.* (Act) provides that lands donated to a political subdivision for use as a "public facility," a term defined in the Act as including a park, shall be deemed to be held by such political subdivision, as trustee, for the benefit of the public with full legal title in said trustee. Section 2 of the Act, 53 P.S. §3382. The Borough was careful to note that it had given notice to the Attorney General concerning the hearing in the instant case. In that notice, the Borough states,

> 5. The value of the *charitable interest* cannot be determined and amounts to the use of a parcel of ground by the citizens of the Borough of Ridgway as a public municipal park. (Emphasis added.)

Unfortunately, nowhere in the notice to the Attorney General, in the record before us or in the briefs of counsel is the statutory authority which requires such notice to the Attorney General cited. Inasmuch as Section 5 of the Act, 53 P.S. §3385 does provide for such notice and since the provisions of the Act clearly apply to the subject deed, we assume that notice to the Attorney General was given pursuant to the Act.[6] If the

---

[6] The only other provision of which we are aware for notice to the Attorney General under circumstances even remotely similar to the ones in the instant case would be Section 2 of the Act of June 30, 1972, P.L. 508, 20 Pa. C.S.A. §6110. That provision, however, does not become operative until the charitable purpose at issue has been impossible of fulfillment, a condition not alleged by the Borough here.

provisions of the Act do apply in the instant case, an issue we do not reach, it must then be observed that neither the Borough's procedure nor the trial court's order comport with the provisions of that Act. Section 4, 53 P.S. §3384.

Having concluded that the subject deed of dedication imposed a charitable trust upon Grant Park of which the Borough is trustee and the public is the beneficiary, we now proceed to determine whether the placement of a fire engine house there is consistent with the dedication. We hold that it is not. "A public park may be defined as a tract of ground kept more or less in its natural state, or embellished by the planting of additional trees and flowers and devoted to the purposes of pleasure, recreation and amusement." *Bernstein v. Pittsburgh,* 366 Pa. 200, 206, 77 A.2d 452, 455 (1951). The issue in *Bernstein* was whether an open air public auditorium could be constructed in Schenley Park. In permitting the construction of the auditorium, the Court stated that

> [w]hile the entire park acreage or any substantial part of it cannot, of course, be built upon so as unduly to destroy the enjoyment of fresh air, sunshine and exercise, the erection within its borders of monuments, museums, art galleries, public libraries, zoological and botanical gardens, conservatories, and the like, is commonly recognized and accepted as being within the normal scope and ambit of public park purposes....

*Id.* at 206-7, 77 A.2d at 455.

Quite obviously, then, a public park may provide for pleasure, recreation and amusement in many forms. In the instant case, Grant Park appears to be a somewhat restful area dotted with shade trees, some playground areas and a small ball field. The Borough

proposes to use 4800 square feet of this small[7] neighborhood park and playground as a site for a fire engine house. The inherently unpredictable and intrusive nature of a fire engine house is hardly conducive to a restful atmosphere nor to the safety and welfare of small children who are the most frequent users of this park. It is a matter of common knowledge that when there is a fire the emphasis necessarily must be upon speed. One can easily imagine the noise and confusion as volunteers race their cars to the engine house, don their equipment and then rush away in speeding fire trucks to the scene of the fire all of which is preceded or accompanied by sirens and whistles. In our opinion, this is not "pleasure," "recreation," or "amusement," although it is certainly a serious and necessary service.

We have found two reported cases involving the proposed placement of a fire engine house in a public park. In *Reichelderfer v. Quinn*, 287 U.S. 315 (1932), the United States Supreme Court dismissed an action to prevent the location of a fire engine house in Rock Creek Park but the Court was careful to point out that the situation where Congress has set aside a piece of land for a park and then enacted legislation which directed the construction of a fire engine house must be distinguished from the situation where an individual has dedicated land to the public or has made a conveyance to a municipality for park purposes. In the latter situation the court noted that a trust is imposed, the breach of which may be restrained. *Id.* at 320 (footnote 4).

In *Owens v. Borough of Hawley*, 35 D. & C.2d 531 (1964), the Court of Common Pleas of Wayne County enjoined the construction of a borough hall

---

[7] The actual dimensions set forth in the deed of dedication are 546.5 feet x 10.5 feet x 524 feet x 178 feet.

and fire engine house on land deeded to the Borough of Hawley with language quite similar to that used in the subject deed.

We conclude that our decision that a fire engine house is not compatible with use of land for a public park is consistent with those precedents.

The Borough argues that only a "small percent" of the land will be used for the proposed building. The size of the area used is not the critical factor. It is the nature of the use that governs. The Borough further argues that the park users will be benefitted by the presence of new restroom facilities in the back of the fire engine house[8] and that the presence of the fire-fighters will prevent vandalism of the park equipment. Again, while these may be laudable benefits, the issue is not whether the proposed use will provide incidental benefits to the public, but rather whether the use is permitted under the grant.

For the reasons given above, we find that the lower court erred as a matter of law in determining that the Borough could erect a fire engine house in Grant Park.

ORDER

AND Now, this 4th day of February, 1981, the order of the Court of Common Pleas of the 59th Judicial District, Elk County Branch, entered September 13, 1979 to 79-557 is hereby reversed.

---

[8] The DCA grant included money for the construction of new restroom facilities in the park.