455 A.2d 142

Glenn W. SMILEY, Administrator of the Estate of Sandra L. Smiley, Deceased, Glenn W. Smiley, in His Own Right, Betty S. Smiley and Glenn Douglas Smiley, Appellants at No. 628

v.

OHIO CASUALTY INSURANCE CO., Appellant at No. 629.

Superior Court of Pennsylvania.

Argued Jan. 12, 1982.

Filed Jan. 7, 1983.

248

William M. Radcliffe, Pittsburgh, for appellants (at No. 628) and for appellees (at No. 629).

Stephen Paul McCloskey, Washington, for appellant (at No. 629) and for appellee (at No. 628).

Before HESTER, BECK and VAN der VOORT, JJ.

VAN der VOORT, Judge:

This is a No-fault auto insurance case arising out of the death of Sandra L. Smiley, who was killed in an automobile accident in Fayette County on July 30, 1978. She survived the accident by approximately two (2) hours, during which time she was removed by ambulance to a local hospital. On December 5, 1978, Ohio Casualty Insurance Company, hereinafter the insurer, reimbursed. the estate of the deceased victim in the sum of $695 for ambulance and hospital bills and $1,500 for funeral expenses.

Sandra was survived by her father Glenn W. Smiley, her mother, Betty S. Smiley, and a brother, Glenn Douglas Smiley, hereinafter the claimants. On January 7, 1980, the claimants filed an assumpsit action against the insurer in the Court of Common Pleas of Fayette County for work loss benefits on behalf of Glenn W. Smiley as administrator of his daughter's estate or, alternatively, on behalf of the father, mother, and brother, as survivors of the deceased victim.

On July 24, 1980, the Complaint was amended to include a claim by the three family members for survivor's benefits. On both counts, the claimants ask for interest at the rate of 18% per anum for the period of delay in payment beyond the statutory deadline for payment, 40 P.S. § 1009.106(a),[1] and for allowance of a reasonable attorney's fee. The insurer filed a responsive answer denying liability for either work loss or survivor's benefits, and later pleaded the statute of limitations as a bar to recovery on both counts, and moved for judgment on the pleadings.

In support of it's motion for judgment on the pleadings, the insurer took the deposition of Glenn W. Smiley, the father of the deceased victim. He testified that Sandra had lived at home with her parents, had been a full time teacher with the Albert Gallatin School District, that she had paid no rent to her parents, but had contributed money from time to time for household items and incidentals, had occa-

---

1. Pennsylvania No-fault Motor Vehicle Insurance Act, 40 P.S. § 1009.-106(a).

sionally helped her brother pay for maintenance items on his car, and might have helped pay for his college education, although there had been no understanding with her about such help.

The lower court accepted the testimony of Sandra's father as true, and concluded that, while the deceased victim provided occasional assistance to the claimants, she was by no means actually supporting either her parents or her brother, and that none of them was dependent on her.

■ In ruling upon a motion for summary judgment, the record is to be examined in the light most favorable to the nonmoving party, *Hankin v. Mintz*, 276 Pa.Super.Ct. 538, 540, 419 A.2d 588 (1980); and summary judgment is to be allowed only if the pleadings and depositions show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law, Pa.R.C.P. 1035(b).

In light of these guidelines, the lower court sustained the eligibility of Sandra's estate to recover work loss benefits, but ruled that the claim was barred by § 1009.106(c)(2) of the No-fault Act because the action had not been brought within one year after death.

The court denied the claim for survivor's benefits, because the uncontradicted testimony of Sandra's father established that none of her family had been dependent on her at the time of her death. The court rejected the contention that it was sufficient to establish the daughter's probable financial contributions to the claimants in future years.

The court also ruled that the claim for work loss benefits bore interest at the rate of 18% per anum for the period of delay in payment, but that the allowance of attorney's fees depended upon a showing of bad faith by the insurer, and was an issue inappropriate for determination on summary judgment. The court concluded by dismissing the Complaint, and both the claimants and the insurer have appealed.

The insurer contends that an estate can only recover work loss benefits if one or more of the beneficiaries of the estate are survivors of the deceased victim who were financially dependent upon the victim at the time of her death.

A work loss benefit is not a form of survivor's benefit, but is in the nature of reimbursement to the estate of the deceased for income he or she would probably have earned but for the accident. 40 P.S. § 1009.103.

Survivor's benefits, by way of distinction, are what a survivor might reasonably have expected to receive from the victim in money or services, had the victim not sustained the fatal injury. 40 P.S. § 1009.103.

Each is a separate type of benefit, the work loss benefit intended to reimburse the estate of the victim for lost earnings, and survivor's benefits to reimburse surviving family members for what they would have received had the victim lived. Both may be claimed in a single action. A work loss claim is comparable to a survival action and a survivor's claim is comparable to a wrongful death action. These conclusions were fully developed in *Heffner v. Allstate Insurance Co.*, 265 Pa.Superior Ct. 181, 190, 401 A.2d 1160 (1979), affirmed, 491 Pa. 447, 421 A.2d 629, 636 (1980), and further reaffirmed and clarified in *Freeze v. Donegal Mutual Insurance Co.*, 301 Pa.Superior Ct. 344, 447 A.2d 999 (1982). *Freeze* has been followed in *Wingeart v. State Farm Mutual Auto Insurance Co.*, 302 Pa.Super.Ct. 524, 449 A.2d 40 (1982), and *Reynolds v. Nationwide Mutual Insurance Co.*, 303 Pa.Super.Ct. 31, 449 A.2d 62 (1982); *Hartleb v. The Ohio Casualty Insurance Company*, 305 Pa.Superior Ct. 231, 451 A.2d 506 (1982); *Miller v. United States Fidelity and Guaranty Company*, 304 Pa.Superior Ct. 43, 450 A.2d 91 (1982).

■ While it is true that a recovery of both work loss benefits and a survivor's loss claim may involve some of the same potential earnings of the victim in both claims, any duplication is corrected by deducting the decedent's contribution of income under survivor's loss recovery from the

amount recovered on behalf of the estate under work loss. *Allstate Insurance Co. v. Heffner*, 491 Pa. 447, 459–60, 421 A.2d 629 (1980).

We conclude that the estate of the victim has a right to recover work loss benefits without regard to the status of any of the claimants as survivors.

We next address the claim of the father, mother, and brother of the deceased victim to survivor's benefits. The lower court ruled that these family members did not qualify for survivor's benefits because "when the victim and survivor do not share a spousal relationship, then the survivors must affirmatively demonstrate that they were dependent upon the deceased victim for support in order to recover survivor's loss benefits." On appeal, the insurer supports this position, while the Smiley family contends that a partial dependency on the deceased victim qualifies them for recovery of survivor's benefits. Neither of these positions reflect current decisional law on the subject.

■ Dependency is not a requirement for recovery of survivor's benefits if the survivor is a parent or a brother, as here. It was quite recently ruled by this Court, sitting en banc, in *Chesler v. Government Employees Insurance Company*, 302 Pa.Superior Ct. 356, 448 A.2d 1080 (1982):

> We hold today that the word "dependent" contained in the definition of "survivor" in Section 103 of the No-Fault Act, does not modify the entire sub-section, *i.e.* the words "child, parent, brother, sister," but was intended by the General Assembly to modify only the word immediately preceding it—"relative."

Dependency on the deceased victim, either total or partial, was not a condition precedent to the recovery of survivor's benefits in this case, and the claim for such benefits should not have been stricken as insufficient because dependency was insufficiently claimed. It should be noted, in fairness to the trial court and the litigants on appeal, that *Chesler* was decided subsequent to the lower court's decision and the argument on appeal.

The insurer contends that both claims, work loss benefits and survivor's benefits, are barred by the time limitations on claims found in the No-fault Act, 40 P.S. § 1009.106(c). The lower court sustained this contention with respect to the estate's claim for work loss benefits, but did not rule on the applicability of the time limitations to the family's claim for survivor's benefits because the court held that claim to be without merit because none of the claimants had been financially dependent on the victim at the time of her death.

On appeal, the insurer presses its claim that both causes of action are barred because not brought within the time limitations of the No-fault Act. The statute provides, § 1009.106(c):

(1) If no-fault benefits have not been paid *for loss arising otherwise than from death,* an action therefore may be commenced not later than two years after the victim suffers the loss and either knows, or in the exercise of reasonable diligence should have known, that the loss was caused by the accident, or not later than four years after the accident, whichever is earlier. If no-fault benefits have been paid for *loss arising otherwise than from death,* an action for further benefits, *other than survivor's benefits,* by either the same or another claimant; may be commenced not later than two years after the last payment of benefits.

(2) If no-fault benefits have not been paid to the deceased victim or his survivor or survivors, *an action for survivor's benefits* may be commenced not later than one year after the death or four years after the accident from which death results, whichever is earlier. If the survivor's benefits have been paid to any survivor, *an action for further survivor's benefits* by either the same or another claimant may be commenced not later than two years after the last payment of benefits. If no-fault benefits have been paid for loss suffered by a victim before his death resulting from the injury, *an action for survivor's benefits* may be commenced not later than one

year after the death or six years after the last payment of benefits, whichever is earlier.  (Emphasis added).

■  We conclude that the time limitation imposed upon the estate's claim for work loss benefits is controlled by the last sentence of paragraph (1) of § 1009.106(c).  It is controlling because no-fault benefits have been paid in this case for "loss arising otherwise than death", namely, the ambulance and hospital bills of $695, which were incurred before death as a result of the accident.  *Sachritz v. Pennsylvania Mutual Casualty Insurance Co.*, 293 Pa.Super.Ct. 483, 439 A.2d 678 (1981).  Reimbursement to the estate for these expenses was paid by the insurer on December 5, 1978. The claim for work loss benefits was filed on January 7, 1980, well within the two year statute of limitations imposed by the statute.

■  However, the time limitation on a suit for survivor's benefits is controlled by § 1009.106(c)(2), rather than (c)(1), because of the specific exclusion on "survivor's benefits" from the last sentence of paragraph (1).  The third sentence of § 1009.106(c)(2) provides:

If no-fault benefits have been *paid for loss suffered by a victim before his death* resulting from the injury, an action for survivor's benefits may be commenced not later than one year after the death or six years after the last payment of benefits, whichever is earlier.  (Emphasis added).

The victim incurred her debt for ambulance and hospital bills in the two hours between the accident and her death. The accident occurred on July 30, 1978, and the insurer reimbursed the estate of the victim for these expenses on December 5, 1978.  The Complaint was amended to include no-fault benefits, on July 24, 1980.

The reimbursement for ambulance service and hospital costs was obviously a "no-fault benefit", which is defined in the No-fault Act to mean "basic loss benefits, added loss benefits or both".  "Basic loss benefits", in turn, are

defined as "benefits provided in accordance with this act for the net loss sustained by a victim ...." 40 P.S. § 1009.103.

The payment for ambulance and hospital bills was reimbursement for a loss suffered before death (but paid after death). The statute imposed a limitation of one year after death "if no-fault benefits have been paid for loss suffered by a victim before his death ...." The claimants contend that this limitation is inapplicable because payment of the claim was not made before death. This poses the issue of whether "before his death" modifies only the immediately antecedent words "loss suffered by a victim" or whether it modifies "paid" as well.

■ This appears to be an issue of first impression. It is an elementary principle of interpretation, and an accepted canon of statutory construction, that qualifying words or phrases are to be applied to the words, phrases, or clauses immediately preceding them, but that they do not extend to or include other words, phrases, or clauses more remote, unless such extension or inclusion is clearly required by the intent or meaning of the context or required by an examination of the entire statute. *Buntz v. General American Life Insurance Co.*, 136 Pa.Superior Ct. 284, 285, 289, 7 A.2d 93 (1939); *Chesler*, 302 Pa.Superior Ct. at 356, 448 A.2d 1080; *Midboe v. State Farm Mutual Automobile Insurance Company*, 495 Pa. 348, 359, 433 A.2d 1342 (1981).

We find nothing in the sentence or in the paragraph of which it is a part which suggests that the words "before his death" should modify not only the immediately antecedent "loss suffered", but the remote word "paid" as well. The claimants offer no explanation of why their interpretation is required by the intent or the context of the sentence. Had the claimants' interpretation been intended, the sentence would more appropriately have been worded, "if no-fault benefits have been paid before death for loss suffered by the victim"; but it was not so worded.

If we were to accept the claimants' interpretation and apply "before his death" as a limitation both on the immediately antecedent words "loss suffered" and on the earlier words "paid" as well, it would take the claim for survivor's benefits entirely out of the statute of limitations contained in the No-fault Act, § 1009.106(c), and, as a consequence, put it under the general six year statute of limitations which applied to contract actions. 42 Pa.C.S. § 5527.

This would be disruptive of good administration of the No-fault Act in two respects: 1) It would weaken the prompt payment of benefits mandated by No-fault Act § 1009.106(b), by substituting a six year limitation for a one year period; 2) It would also permit a claim for survivor's benefits to be brought several years after actions for work loss benefits arising from the same accident, but controlled as to timeliness by § 1009.106(c)(1). This would permit claims for survivor's benefits to be made several years after claims for work loss benefits had been paid, thereby eliminating the opportunity to prevent duplication of payments from the same potential earnings by deducting the duplication from the work loss payments, as directed by *Allstate,* 491 Pa. at 459–60, 421 A.2d 629.

As we read the various time limitations contained in No-fault section 1009.106(c), we sense an attempt to cover all possible claims under the No-fault Act and to establish an interrelationship between the several sentences which state those limitations. Despite the fact that at least two situations have arisen which were not covered by the Act and, therefore, fell under the general six-year limitation relating to contract actions, *Wright v. Allstate Insurance Co.,* 271 Pa.Superior Ct. 559, 414 A.2d 395 (1979), and *Guiton v. Pa. National Mutual Casualty Insurance Co.,* 301 Pa.Superior Ct. 146, 447 A.2d 284 (1982), we should not strain statutory language to increase the number of such unintended exceptions. We concluded that the claimants' action for survivor's benefits is governed and barred by § 1009.106(c)(2) of the No-fault Act. Death occurred on

July 24, 1978, and the claim was made on July 20, 1980, more than one year after death.

■ The insurer has appealed the ruling that the victim's estate is entitled to interest at the rate of 18% per annum for the time that payment has been delayed beyond the due date for payment as defined by § 1009.106(a) of the No-fault Act. The insurer contends that good faith resistance to a claim, based on a reasonable cause, should be read into the Act as a defense to the payment of interest. It was ruled otherwise in *Hayes v. Erie Insurance Exchange*, 493 Pa. 150, 425 A.2d 419 (1981), and *Motley v. State Farm Mutual Automobile Insurance Co.*, 303 Pa.Superior Ct. 120, 449 A.2d 607 (1982). In those cases, we held that § 1009.106 was unambiguous and valid in its requirement that 18% interest is owed on any overdue payment, regardless of the good faith of the insurer or the reasonableness of the cause of delay.

The insurer challenges the refusal of the lower court to rule on the right of the claimants to a reasonable attorney's fee under § 1009.107(3) of the Act. It contends that the claimants have presented claims so clearly without merit that their request for a reasonable attorney's fee should have been denied on the insurer's motion for judgment. The claimants contend that resolution of the issue should await a trial and development of relevant facts.

The No-fault Act limits such allowances to situations where the insurer has refused payment "without reasonable foundation". The lower court ruled: "[W]hether defendant acted in good faith in denying benefits remains a material issue of the fact. As such, disposition of this issue by summary judgment is inappropriate". We concur.

The order of the court below is vacated, and the case is remanded for further proceedings consistent with this Opinion.

BECK, J., files a concurring opinion.

HESTER, J., files a concurring and dissenting opinion.

BECK, Judge, concurring:

I agree with the majority opinion that the estate's claim for work loss benefits is not barred by the statute of limitations of the No-Fault Act 1009.106(c), but on a different basis.

The majority reasons that the last sentence of paragraph 1 of 106(c) allows the instant claim for work loss benefits because no-fault benefits have been paid for "loss arising otherwise than from death" (the $695 paid on December 5, 1978 for ambulance and hospital costs) and therefore a two year statutory limit runs from the December 1978 payment.

In *Sachritz v. Pennsylvania Mutual Casualty Insurance Co.*, 293 Pa.Super. 483, 439 A.2d 678 (1981) we held that post-mortem work loss benefits may not be covered by 1009.106(c) and may be subject, instead, to the general six year statute of limitations for contract actions. The claim was barred in *Sachritz* because some work loss benefits had been paid before death, and therefore the action was covered by the two year rule in that last sentence of paragraph 1 of 106(c). In *Guiton v. Pennsylvania National Mutual Casualty Insurance Co.*, 301 Pa.Super. 146, 447 A.2d 284 (1982) our Court allowed a claim for post-mortem work loss benefits that did not meet the two year limit. We held that since no work loss benefits had been paid before death (although funeral expenses, ambulance costs, and survivors losses had been paid before death) the six year statute governed.

Sandra L. Smiley claimed no work loss benefits before her death, and therefore the facts of her case are governed by *Guiton*. Since her claim is well within the six year limit, it must be allowed.

HESTER, Judge, concurring and dissenting:

I respectfully dissent from that portion of the majority opinion which holds that the estate of the deceased victim is entitled to recover work loss benefits under the No-Fault Act. I dissent for the reasons set forth in my Dissenting Opinion in *Freeze v. Donegal Mutual Insurance Co.*, 301

Pa.Super.Ct. 344, 447 A.2d 999 (1982). In *Freeze,* this court held that the right of an estate of a deceased victim to recover no fault benefits was authorized by the Pennsylvania Supreme Court's opinion in *Allstate Insurance Company v. Heffner; Pontius, Administrator of the Estate of Janet A. Pontius, Deceased,* 491 Pa. 447, 421 A.2d 629 (1980). This is not so. In the *Heffner* portion of that appeal, the Supreme Court affirmed this court's opinion in *Heffner v. Allstate,* 265 Pa.Super. 181, 401 A.2d 1160 (1979) wherein we held that the surviving spouse was entitled to recover Work Loss Benefits under No-Fault "as the survivor of a deceased victim", 188 of 265 Pa.Superior, 1163 of 401 A.2d. Our holding, I repeat, authorized recovery of Work Loss Benefits by the widow as a "Survivor", not as Administratrix of the Estate of the deceased victim.

In the very brief portion of its Opinion dealing with the fact situation in the *Pontius* appeal, the Supreme Court merely recites a history of the case, pages 448–449 of 491 Pa., page 630 of 421 A.2d, and then "affirms the Orders of the Superior Court," 460 of 491 Pa. 636 of 421 A.2d. The only order of this court pertaining to the *Pontius* case was entered by Judge Wieand, dated July 3, 1979 which reversed and remanded to the Common Pleas Court of Dauphin County. The Supreme Court's opinion does not hold that the estate of a deceased victim is entitled to Work Loss Benefits. The No-Fault Act makes no such provision.

By awarding Work Loss Benefits to the Estate of a deceased victim, the majority in *Freeze,* supra, created a situation that makes it possible for Work Loss Benefits to be paid to individuals and/or institutions far removed beyond the legislative definition of "survivors". It is very possible that a deceased victim, in the provisions of a Will, could devise all or a portion of his or her estate to the American Nazi Party, the Ku Klux Klan, the P.L.O. or a similar organization. Are we to believe that this was the intent of the Legislature when they created the benefits set forth in the No-Fault Act? The answer is obvious.

I therefore dissent from that section of the majority opinion which would award Work Loss Benefits to the Smiley Estate. I would authorize the award of Work Loss Benefits to the father, mother and brother of the deceased victim as survivors as defined in the No-Fault Act.

I concur in the remainder of the majority opinion.