# In re Conveyance of 1.2 Acres of Bangor Memorial Park to Bangor Area School District

*Alan B. McFall,* for petitioner, Borough of Bangor.

*Donald F. Spry II,* for intervenor, Bangor Area School District.

*David J. Cerau* and *Preston W. Moritz,* for respondent, Taxpayers Organization.

MORAN, *J.,* December 8, 1988 — This matter comes before the court upon a petition of the Borough of Bangor to convey 1.2 acres of Bangor Memorial Park to the Bangor Area School District.

In the 1930's, the original parcel of land that makes up a portion of what is today known as Bangor Memorial Park was deeded to the Borough of Bangor. The original 18-acre complex underwent various improvements through the auspices of the New Deal's Works Progress Administration, popularly known as the WPA. Additionally, local resi-

dents contributed funds which were used to purchase equipment for the park. Since its creation in the 1930's, approximately 16 acres of land have been added to the park. The park has been enjoyed by Borough of Bangor residents, as well as people from neighboring municipalities, from the late 1930's through the present day.

On June 5, 1950, ordinance no. 416 was enacted by the council of the Borough of Bangor. Ordinance No. 416, in pertinent part, states:

"Whereas, the citizens of the Borough of Bangor, acting through their municipal authorities and the religious, civic, fraternal and social organizations of the borough, have created and are maintaining a public park; and

"Whereas, said park has not been officially dedicated nor named; and

"Whereas, the members of Bangor Borough Council, entrusted with the privilege of dedicating and naming the park, are convinced that the citizens who created and are maintaining the park acted and are acting in the same spirit that motivated those who served the United States of America in the wars waged by our Country for the preservation of democratic ideals and principles, for the defense of the dignity of the individual, and for the furtherance of brotherhood among men of all nations:

"Now, therefore, be it ordained and enacted and it is hereby ordained and enacted by the Council of the Borough of Bangor that, in honor and respect for the veterans of all wars, as a tribute to those veterans who still are with us and in loving memory of those who have passed on, there is hereby dedicated to the use of the public the park of the Borough of Bangor, a living memorial, hereafter to be known as Bangor Memorial Park."

The park, according to all parties to the present

litigation, has been maintained and improved continuously throughout its over half-century history, without any diminution in its size, community support or usage by the public.

On December 7, 1987, the Bangor Borough Council voted to make the subject 1.2-acre tract, which is a part of the Bangor Memorial Park, available to the Bangor Area School District for the purpose of building a new, 750-pupil elementary school to replace the present elementary school which is located on Fourth Street in Bangor, Pennsylvania.

On December 21, 1987, the Bangor Area School District voted to accept the subject 1.2-acre tract as the site for the new school.

The subject tract is located on the east side of South.10th Street and is separated from the remaining large portion of the park by that street. The subject portion of the park has a lighted basketball court, restroom facilities, a pavilion and several stone fireplaces which apparently are part of the improvements made by the Works Progress Administration during the Depression. It is not disputed that the 1.2-acre parcel is heavily used by the public and is an integral and important part of the Bangor Memorial Park.

On October 3, 1988, upon prior notice from respondent taxpayers that formal opposition existed to the proposed conveyance, the Bangor Borough Council resolved to seek approval of this court for the proposed conveyance. The Bangor Borough Council proposed to substitute for the land to be granted to the school district, a 3.6-acre tract of land owned by the borough, located at a considerable distance from the subject park. The proposed substitute land is known as the Flory Dam site. Additionally, the Bangor Borough Council resolved to reconstruct any recreational facilities located on the

subject 1.2-acre parcel at other locations within the remaining areas of the Bangor Memorial Park.

On October 4, 1988, this court granted a rule to show cause, if any, why the Borough of Bangor should not be permitted to convey the 1.2-acre tract of Bangor Memorial Park to the Bangor Area School District for the purpose of allowing the Bangor Area School District to construct an elementary school on that site.

This court held hearings on the borough's petition on October 21, 1988 and October 31, 1988. All parties were then given 10 days within which to brief the issues raised at those hearings. The parties' respective briefs have been received and the petition is now ready for disposition.[1]

The case at bar presents the court with an issue of considerable civic importance to petitioner, the Bangor Borough Council, and intervenor, the Bangor Area School District, as well as the respondent taxpayers.

Petitioner and intervenor both assert that a new elementary school will enhance the remainder of Bangor Memorial Park, and will also reflect a social policy that stresses the importance of maintaining the Borough of Bangor as a viable small-town community with all of the traditional civic components of such a community, including its own local elementary school.

Respondents view the proposed conveyance as one which, despite the relatively small depletion of the total park area, will adversely affect the use of

1. The attorney general of Pennsylvania, through Deputy Attorney General Lawrence Barth, participated in the second hearing held on October 31, 1988, and was given the opportunity to file a brief. The attorney general submitted letters to the court dated October 4, 1988 and November 23, 1988 in which the attorney general stated that his office was not opposed to the proposed conveyance.

the park and will also constitute a betrayal of the historic significance of the park as a memorial to war veterans.

During the course of the two days of hearings, this court heard testimony that indicated that the proposed conveyance is a highly emotional issue for the local residents of the Borough of Bangor and the surrounding communities. While the court understands and appreciates the social, civic and emotional significance that the involved parties place on the outcome of the proposed conveyance, it must be stressed that the parties have chosen to put this matter before the court for resolution. That choice requires the decision to be made within the narrow confines of the law governing such issues. The court notes that such a narrowly constrained forum may not be best suited to the resolution of such significant civic issues. A community consensus on a course of action would be a far preferable solution. However, lacking such a consensus, this court is faced with the issue raised in the Borough of Bangor's petition. With this statement in mind, we now turn to the legal issues before the court.

The first issue before the court is whether 53 P.S. §3381 et seq. applies to the instant case. The relevant portions of 53 P.S. §3381 et seq. state:

"§3382. *Property held in trust* —

"All lands or buildings, heretofore or hereafter donated to a political subdivision for use as a public facility, or dedicated to the public use or offered for dedication to such use, *where no formal record appears as to acceptance by the political division,* as a public facility and situate within the bounds of a political subdivision, regardless of whether such dedication occurred before or after the creation or incorporation of the political subdivision, shall be deemed to be held by such political subdivision, as

trustee, for the benefit of the public with full legal title in the said trustee . . . " (emphasis supplied)

"§3384. *Orphans' court relief —*

"When, in the opinion of the political subdivision which is the trustee, the continuation of the original use of the particular property held in trust as a public facility is no longer practicable or possible and has ceased to serve the public interest, or *where the political subdivision, as trustee for the benefit of the public, is in doubt as to the effectiveness or the validity of an apparent dedication because of the lack of a record of the acceptance of the dedicated land or buildings,* the trustee may apply to the orphans' court of the county in which it is located for appropriate relief. The court may permit the trustee to —

"(1) Substitute other lands or property of at least equal size and value held or to be acquired by the political subdivision in exchange for the trust property in order to carry out the trust purposes.

"(2) If other property is not available, sell the property and apply the proceeds to carry out the trust purposes.

"(3) In the event the original trust purpose is no longer practicable or possible or in the public interest, apply the property or the proceeds therefrom in the case of a sale to a different public purpose.

"(4) Relinquish, waive or otherwise quitclaim all right and title of the public in and to such land and buildings as have been apparently dedicated but for which no formal acceptance appears of record: Provided, only, that the court is satisfied upon hearing the evidence that there is no acceptance by implication arising out of public user or otherwise, the court shall also determine the consideration, if any, to be paid to the political subdivision." (emphasis supplied)

Petitioner contends that Bangor Memorial Park is land held in trust under 53 P.S. §3381 et seq., and that it has fulfilled the requirements under 53 P.S. §3384. Therefore, it argues, the court must approve the petition for the conveyance of the subject 1.2-acre parcel. This is the legal position that the intervenor also supports.

Respondents assert that 53 P.S. §3381 et seq. is inapplicable because Bangor Memorial Park was acquired by the borough for use as a public park and was formally accepted and dedicated as such by the political subdivision, the Borough of Bangor. Respondents further contend that common-law trust principles governing public trusts must be applied to the proposed conveyance.

In order to determine whether or not 53 P.S. §3381 et seq. applies, the court must look to the language of the statute. The rules of statutory construction are clear. The rules of construction found at 1 Pa.C.S. §1903(a) state:

"Words and phrases shall be construed according to rules of grammar and according to their common and approved usage; . . . "

"A cardinal rule of statutory construction is that we must give terms in a statute the meaning dictated by the context in which they are used." *Philadelphia Housing v. Commonwealth Labor Relations,* 508 Pa. 576, 499 A.2d 294 (1985).

"It is an elementary principle of interpretation, and an accepted canon of statutory construction, that qualifying words or phrases are to be applied to the words, phrases, or clauses immediately preceding them, but that they do not extend to or include other words, phrases, or clauses more remote, unless such extension or inclusion is clearly required by the intent or meaning of the context or required by an examination of the entire statute." *Smiley v.*

*Ohio Casualty Insurance Company,* 309 Pa. Super. 247, 455 A.2d 142 (1983).

In the case at bar, the key language is contained in the following words:

"[O]r dedicated to public use or offered for dedication to such use, *where no formal record appears as to acceptance by the political division . . .* " 53 P.S. §3382.

It is obvious to this court that the phrase " . . . where no formal record appears as to acceptance by the political division . . . " acts as a modifier to the language that directly precedes it. This finding is not only grammatically correct, but as the cited case indicates, it is also the legal, statutory construction required under the rules of construction, *supra.* Thus, 53 P.S. §3381 et seq. is applicable only when there has been no acceptance by, and dedication of, land for use as a public facility.[2] It is not disputed that on June 5, 1950,[3] pursuant to ordinance no. 416, the Borough of Bangor formally dedicated the existing Bangor Memorial Public Park as a public park. This action by the Bangor Borough Council constitutes the formal dedication of the park which had been previously acquired for public use as a park in the 1930's. This formal acceptance and dedication by the political subdivision of land to the public for use as a park removes the proposed 1.2-acre conveyance from the parameters of 53 P.S. §3381. Simply stated, the court holds that 53 P.S. §3381 et seq., does not apply to the proposed conveyance of the 1.2-acre parcel of Bangor Memo-

2. 53 P.S. §3381(3) states: "Public facility shall mean without limitation any park, theatre, open air theatre, square, museum, library, concert hall, recreation facility or other public use."

3. This data precedes the enactment of 53 P.S. §3381 et seq.. However, the language of section 3382 makes the statute applicable to prior as well as prospective land donations or dedications.

rial Park and, therefore, the conveyance must be judged, instead, solely by common-law principles applicable to land held as a public trust.[4]

The leading case in Pennsylvania regarding the public trust doctrine is *Trustees of the Philadelphia Museums v. Trustees of the University of Pennsylvania,* 251 Pa. 115, 96 Atl. 123 (1915). In the *Philadelphia Museums, supra,* case, land was set aside for the health and public welfare of the citizens of Philadelphia. The land was later dedicated, by ordinance, as a public park. Following this dedication, the land was put to public use and funds were expended by the City of Philadelphia to repair, improve and care for the grounds of the museum and park.

By a series of five ordinances, the City of Philadelphia attempted to repeal the ordinance which had previously dedicated the land for public use and further, to convey the property to the University of Pennsylvania. A deed to the land was given to the University of Pennsylvania and the Board of Trustees of the Philadelphia Museums instituted proceedings to set aside the conveyance from the City of Philadelphia to the University of Pennsylvania.

The Pennsylvania Supreme Court stated that the City of Philadelphia held the land subject to a trust

---

4. The Borough of Bangor and the Bangor Area School District also aver that the proposed conveyance is governed by 20 Pa.C.S. §8301 et seq., which replaced the repealed Revised Price Act. However, the court disagrees. 20 Pa.C.S. §8301, in pertinent part, states:

"The court of common pleas, operating through its appropriate division, may authorize the sale, mortgage, lease or exchange of real property:

"(3) Where the legal title is otherwise inalienable."

The issue before the court involves a *restriction on use* created by the Borough of Bangor's dedication of the subject land as a park. It is not an issue of alienability.

which existed in favor of the community and, further, that the City of Philadelphia, as only a conservator of the title to the land, had "... neither the power nor authority to sell and convey the same [the park] for private purposes." *Philadelphia Museums, supra.* The Supreme Court, in *Philadelphia Museums,* quoted *Davenport v. Buffington,* 97 F. 234 (8th Cir. 1899):

"We are unwilling to concede that a nation or a state which becomes the proprietor of a town site, plats it, and dedicates its streets and parks to public use has had greater or better right to revoke or avoid its grant or covenant than a private proprietor would have. It may be that either, before any rights have accrued, can revoke the dedication, but, after lots have been sold, after streets have been graded, *after parks have been cared for and improved, according to the plat,* — in other words, *after rights have vested in reliance upon the dedication,* — we deny the right of a nation or an individual to revoke it, or to release or destroy the right of the public to the exclusive use of the parks and streets for the purposes for which they were granted.

. . .

"[A] nation, state, or municipality which dedicates land that it owns in the site of a town to public use for the purpose of a park is as conclusively estopped as a private proprietor from revoking that dedication, from selling the park, *from appropriating the land which it occupies to other purposes after lots have been sold, after the town has been settled, and after the park has been improved with moneys raised by the taxation of its residents and taxpayers in reliance upon the grant and covenant, which the dedication evidences."* (emphasis supplied)

The facts of the case at bar are strikingly similar to the facts in *Philadelphia Museums*. The land was acquired for use as a public park. The land that encompasses Bangor Memorial Park was formally dedicated as park land for public use pursuant to local ordinance. Funds were appropriated and expended by the Bangor Borough Council for the care and maintenance of the park. The court is cognizant of the fact that *Philadelphia Museums* was decided over 70 years ago. However, we believe it remains the law which governs this case. It is to be noted that underlying principles of the *Philadelphia Museums, supra,* case have been espoused in more recent decisions.

In *Easton v. Koch,* 152 Pa. Super. 327, 31 A.2d 747 (1943), a case dealing with the taxability of certain real estate owned by a municipality, the City of Easton had purchased a 97-acre parcel of land and dedicated it for use, in its entirety, as a public park. The court held that a municipality may not revoke such a dedication to public use. The court stated:

"The property had been dedicated and was maintained by the city for a public park, which may be comprehensively defined as a public pleasure ground which affords pleasure to the eye as well as opportunity for open-air recreation. See *Laird v. Pittsburgh, et al.,* 205 Pa. 1, 54 Atl. 324: 3 McQuillin, Municipal Corporations, 2d ed., §1255 p. 772. A municipality cannot revoke or destroy, after dedication and acceptance, the right of the public to the exclusive use of the property for the purpose designated. See *Trustees of the Philadelphia Museums v. Trustees of the University of Pennsylvania, et al.,* 251 Pa. 115, 96 A.2d 123 (1915). From the record before us it cannot be said that the rights of the public have vested, in reliance upon the dedication,

in only a portion of the property dedicated. 'There should be reasonable presumptions in favor of the preservation of such public interests, and the acts to constitute an acceptance on the part of the public need be such only as the public wants demanded.' *Taraldson v. Town of Lime Springs et al.,* 92 Iowa 187, 60 N.W. 658." *Easton v. Koch,* 152 Pa. Super. 327, 31 A.2d 747 (1943).

In *Borough of Ridgway v. Grant,* 56 Pa. Commw. 450, 425 A.2d 1168 (1981), a tract of land was conveyed to the Borough of Ridgway in 1921. The deed specified that the land was to be used as a public park to be known as "Grant Park." The land was, in fact, used as a park from the time of its conveyance in 1921. In 1979, the Borough of Ridgway petitioned the Court of Common Pleas of Elk County, pursuant to the Declaratory Judgments Act, to construe the deed as permitting the construction of a firehouse on a site within Grant Park. In *Borough of Ridgway v. Grant, supra,* the Pennsylvania Commonwealth Court held that the actions by the Borough of Ridgway to maintain the park over a long period of time manifested a clear intent to devote the park for public usage. The Commonwealth Court further stated that the use by the public of the land *solely as a park* manifested the public's acceptance of the dedicated land. Following the conclusion that the deed of dedication imposed a charitable trust upon Grant Park, the Commonwealth Court determined that the placement of a firehouse therein was inconsistent with this dedication. It is noted that the *Borough of Ridgway* case was decided subsequent to the enactment of 53 P.S. §3381 et seq.

It is clear that the standards and principles governing the use and maintenance of a park as a public trust first stated in *Philadelphia Museums*

apply to the case at bar. Bangor Memorial Park was dedicated and accepted for use *solely* as a public park. The dedication of Bangor Memorial Park is evidenced by its continuous use as a park from the late 1930's and the subsequent, formal rededication pursuant to ordinance no. 416. The acceptance and dedication of the Bangor Memorial Park as a public park is further evidenced by its heavy use for recreational purposes during the past 50 years, coupled with the expenditure of funds raised through taxes and local community contributions to care for, maintain and improve the park. The public trust doctrine, not 53 P.S. §3381 et seq., applies to the proposed conveyance of the subject 1.2-acre parcel of Bangor Memorial Park. Based upon the public trust doctrine as set forth by our Supreme Court in the *Philadelphia Museums* case, the land must continue to be used solely as a public park and the borough, as trustee, cannot convey any portion of Bangor Memorial Park for a use that is·inconsistent with its charitable trust purpose as parkland.[5]

Finally, while it is our opinion that 53 P.S. §3381 et seq., is inapplicable to the case at bar, we deem further comment appropriate. Had this proposed conveyance been decided under section 3381 et seq., this court would still not permit the conveyance. Section 3384 clearly states that the political subdivision must be of the opinion that the continuation of the original use of the property held in trust as a park is no longer practicable. However, neither the borough's petition nor the borough council's action authorizing the proposed conveyance state that use of the subject 1.2-acre parcel as

---

5. "[W]here a dedication is for a limited or restricted use, any diversion therefrom to some purpose other than the one designated is likewise forbidden." *Bruker v. Carlisle Borough,* 376 Pa. 330, 102 A.2d 418 (1954).

a portion of Bangor Memorial Park is no longer practicable. To the contrary, the court heard testimony from both petitioner and respondent that indicated that the subject 1.2-acre parcel is an important, integral and heavily used part of Bangor Memorial Park. It must be stressed, however, that while the court is of the opinion that the subject 1.2-acre parcel is a valuable portion of Bangor Memorial Park, our decision as to the petition is based solely upon the aforementioned legal principles and not upon any determination regarding feasibility or desirability of its continued use as a park or its potential use as an elementary school.

Wherefore, we enter the following

## ORDER OF COURT

And now, December 8, 1988, the petition of the Borough of Bangor, re conveyance of 1.2 acres of Bangor Memorial Park to Bangor Area School District, is hereby denied and dismissed.