**Fran VUTNOSKI, Individually and as President of Capricorn Softball League and Christopher Phillips, Appellants**

v.

**REDEVELOPMENT AUTHORITY OF the CITY OF SCRANTON.**

Commonwealth Court of Pennsylvania.

Argued June 8, 2006.

Decided Sept. 22, 2006.

Ordered Published Jan. 25, 2008.

Michael P. Gordon, Dunmore, for appellant, Fran Vutnoski.

Carl J. Greco, Scranton, for appellee.

BEFORE: PELLEGRINI, Judge, LEADBETTER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEADBETTER.

Fran Vutnoski and Christopher Phillips (Appellants) appeal from the order of the Court of Common Pleas of Lackawanna County (common pleas), Orphans' Court Division, that granted the Motion for Judgment on the Pleadings filed by the Redevelopment Authority of the City of Scranton (Authority).

The case at bar centers around sale of the William T. Schmidt Sports Complex to the University of Scranton, a private university. The facility is a 10.8–acre recreational facility located in the City of Scranton and more commonly referred to by local residents as the South Side Sports Complex (South Side). South Side's development was completed through use of HUD [1] and Project 70 [2] funds. The "Urban Renewal Plan of the Redevelopment Authority of the City of Scranton, covering the South Side Flats Project A/K/A Project R–6," as amended and adopted by the City of Scranton in January of 1961, explicitly referred to the parcel known as South Side as a "public park" by designating it as such on the accompanying map. In March 1977, the Council of the City of Scranton (City Council) passed Resolution No. 23 of 1977, resolving that South Side's basketball court be known as "Jay Archer Basketball Court"; that its baseball field be known as "Jim Regan Baseball Field"; and that the softball field be known as "Joe Butler Softball Field." In November 1977, City Council passed Resolution No. 115 of 1977, resolving that South Side be known as the "William T. Schmidt Sports Complex."

In December 2002, the mayor of the City of Scranton forwarded an Ordinance, File Of The Council No. 92 of 2002, to City Council, asking that it approve the transfer of South Side to the Authority. The ordinance, which was passed on December 9, 2002, provides in relevant part that "it is in the best interest of the City of Scranton to transfer the parcels of land which together comprise the South Side Sports Complex to the Redevelopment Authority of the City of Scranton;" "the Redevelopment Authority of the City of Scranton is willing to receive the Property and oversee the maintenance and operation of the Sports Complex;" and "the Mayor and other appropriate City Officials are hereby authorized to transfer the properties which together comprise the South Scranton Sports Complex to the Redevelopment Authority of the City of Scranton and are also hereby authorized to execute any and all documents necessary to effectuate and complete this transfer." Certified Record, C.R., File of the Council No. 92 at 1.

In July 2003, the Authority and the University of Scranton entered into a Memorandum of Understanding (MOU) providing for the conveyance of South Side to the university. This agreement included the provision that "[t]he University agrees to fully perform all terms and conditions of legislation (PA Senate Bill 850) with respect to conveyance of the Complex to the University." C.R., MOU between the Re-

---

1. Housing and Urban Development

2. Project 70 Land Acquisition and Borrowing Act, Act of June 22, 1964, P.L. 131, 72 P.S. §§ 3946.1–3946.22. Section 2 of this Act provides, *inter alia:*
   . . . .
   (4) The rapid growth of population in Pennsylvania's urban and suburban areas requires the acquisition of lands for recreation, conservation and historical purposes before such lands are lost forever to urban development or become prohibitively expensive.
   (5) The Commonwealth of Pennsylvania must act to acquire and to assist local gov-

ernments to acquire lands that are available and appropriate for such purposes so that they and the lands previously dedicated to recreation, conservation and historical use may be so preserved.
72 P.S. § 3946.2. Section 20 of the Act, 72 P.S. § 3946.20, affords that "lands acquired under the act are to be used for recreation, conservation and historical purposes, and if the political subdivision fails in this duty, it may be required to reimburse the Commonwealth the funds used to acquire the land." *White v. Township of Upper St. Clair,* 799 A.2d 188, 199 (Pa.Cmwlth.2002).

development Authority of the City of Scranton and the University of Scranton, para. 1. On December 17, 2003, the House of Representatives passed the final version of Senate Bill 850. The Senate passed the bill the next day, and, on December 23, 2003, the Governor of Pennsylvania signed it into law as Act 52 of 2003. The Act expressly removed the restrictions relating to sale of the property which were imposed due to receipt of funds through the Commonwealth pursuant to the Project 70 Land Acquisition and Borrowing Act.[3]

On December 30, 2003, Appellants, who are resident taxpayers of the City of Scranton and users of South Side, filed a three-count complaint in equity "demand[ing] injunctive relief preventing the Redevelopment Authority of the City of Scranton from conveying the South Side Sports Complex." C.R., Complaint at 10. Appellants averred in Count I of their complaint that any transfer of South Side by the Authority, absent the procedural safeguards inherent in what is commonly

known as the Donated or Dedicated Property Act,[4] violates the dictates of that Act. Moreover, they averred in Count II that the City of Scranton did not empower the Authority in File Of The Council No. 92 to sell or otherwise convey the property and, therefore, the City of Scranton's action was ultra vires. They further averred in Count III that the Authority did not properly follow its own procedures in conveying South Side, specifically with respect to Section 10 of the Urban Redevelopment Law,[5] 35 P.S. § 1710 [relating to preparation and adoption of redevelopment proposal].[6] Appellants also filed a petition for a preliminary injunction, which request common pleas denied. Appellants appealed, and, in August 2004, this court dismissed their appeal for procedural reasons. On March 24, 2005, the Authority filed a Motion for Judgment on the Pleadings, which common pleas granted by order dated July 26, 2005.

■ On appeal, Appellants now argue before this court that common pleas' order

---

**3.** In this regard, Act 52 provides in pertinent part:

Section 1. (a) Authorization.—Pursuant to the requirements of section 20(b) of the act of June 22, 1964 (Sp.Sess., P.L. 131, No. 8), known as the Project 70 Land Acquisition and Borrowing Act, the General Assembly hereby authorizes the release of Project 70 restrictions and transfer of the lands owned by the City of Scranton which are more particularly described in subsection (c) to the Redevelopment Authority of the City of Scranton and the sale of said lands by the Redevelopment Authority of the City of Scranton to the University of Scranton for a consideration of $1,150,000, which sum represents at least the fair market value of the property as determined by an appraisal.

(b) Freedom of restrictions.—The lands described in subsection (c) shall be free of restrictions on use and alienation imposed by the Project 70 Land Acquisition and Borrowing Act upon conveyance of said lands by the City of Scranton to the Redevelopment Authority of the City of Scranton and

the subsequent conveyance by the Redevelopment Authority of the City of Scranton to the University of Scranton.

(c) Lands to be released from restrictions.—The parcel of land to be released from Project 70 restrictions is situated in the City of Scranton, Lackawanna County, and more particularly described as follows: All that certain piece or parcel of land being in Ward 18 and Ward 6 of the City of Scranton, County of Lackawanna and Commonwealth of Pennsylvania bounded and described as follows to wit: [specific plot plan description of South Side].
. . . .
Section 2. This act shall take effect immediately.

**4.** Act of December 15, 1959, P.L. 1772, 53 P.S. §§ 3381–3386.

**5.** Act of May 24, 1945, P.L. 991, *as amended.*

**6.** We note, however, that, for purposes of this appeal, Appellants "only raise Counts I and II." Appellants' brief at 7.

granting the Authority's motion amounted to a misapplication of the law.[7] In this regard, Appellants initially contend that, while the Donated or Dedicated Property Act does not absolutely prohibit the sale of dedicated land such as South Side, it does provide that there must first be a finding by the trustee (here, the City of Scranton) that the use of the property is no longer practicable, before providing for a procedural process by which the trustee can seek to extinguish the dedication.[8] Appellants contend that, in contravention of the statute, the appropriate finding in this case was not made, and, in fact, a 2003 study commissioned by the City shows that the infrastructure of South Side is in fair to good condition and South Side is merely in need of minor improvements like weed control.

That said, Appellants aver in their complaint that South Side was expressly dedi-

---

**7.** We explained in *Dunn v. Board of Property Assessment, Appeals and Review of Allegheny County*, 877 A.2d 504, 510 n. 12 (Pa.Cmwlth. 2005) (citation omitted), that a motion for judgment on the pleadings should be granted only when the pleadings show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. When reviewing common pleas' decision to grant judgment on the pleadings, our review is plenary. An appellate court is required to accept as true all well-pled facts of the non-moving party, while considering as adverse to him only the facts that he specifically admits. We will uphold a decision to grant a motion for judgment on the pleadings only where the movant's case is so clear that a trial would be fruitless.

**8.** Section 2 of the Donated or Dedicated Property Act provides:

All lands or buildings heretofore or hereafter donated to a political subdivision for use as a public facility, or dedicated to the public use or offered for dedication to such use, *where no formal record appears as to acceptance by the political division*, as a public facility and situate within the bounds of a political subdivision, regardless of whether such dedication occurred before or after the creation or incorporation of the political subdivision, shall be deemed to be held by such political subdivision, as trustee, for the benefit of the public with full legal title in the said trustee.

53 P.S. § 3382 (emphasis added).

Section 3 provides that "[a]ll such lands and buildings held by a political subdivision, as trustee, shall be used for the purpose or purposes for which they were originally dedicated or donated, except insofar as modified by court order pursuant to this act." 53 P.S. § 3383.

Section 4 provides:

When, in the opinion of the political subdivision which is the trustee, the continuation of the original use of the particular property held in trust as a public facility is no longer practicable or possible and has ceased to serve the public interest, or where the political subdivision, as trustee for the benefit of the public, is in doubt as to the effectiveness or the validity of an apparent dedication *because of the lack of a record of the acceptance of the dedicated land or buildings, the trustee may apply* to the orphans' court of the county in which it is located for appropriate relief. The court may permit the trustee to—

(1) Substitute other lands or property of at least equal size and value held or to be acquired by the political subdivision in exchange for the trust property in order to carry out the trust purposes.

(2) If other property is not available, sell the property and apply the proceeds to carry out the trust purposes.

(3) In the event the original trust purpose is no longer practicable or possible or in the public interest, apply the property or the proceeds therefrom in the case of a sale to a different public purpose.

(4) Relinquish, waive or otherwise quitclaim all right and title of the public in and to such land and buildings as have been apparently dedicated *but for which no formal acceptance appears of record: Provided, only, That the court is satisfied upon hearing the evidence that there is no acceptance by implication arising out of public user or otherwise*, the court shall also determine the consideration, if any, to be paid to the political subdivision. 53 P.S. § 3384 (emphasis added).

cated as a public park and public recreational facility as evidenced by: (1) the map accompanying the Authority's Urban Renewal Plan covering the South Side Flats Project, as amended and adopted by the City in 1961; and (2) City Council's Ordinances Nos. 23 and 115, officially naming South Side and its basketball court and softball and baseball fields. Taking these well-pled averments as true, as we must, we conclude that common pleas did not err in determining that the Donated or Dedicated Property Act is inapplicable, based on this court's earlier, controlling decision in *In re Bangor Memorial Park*, 130 Pa. Cmwlth. 143, 567 A.2d 750 (1989) (*Bangor II*).

In *Bangor II*, this court affirmed the order of the Northampton County Court of Common Pleas in *In re Bangor Memorial Park*, 4 Pa. D. & C.4th 343 (1988) (*Bangor I*), denying the Borough of Bangor's petition to convey 1.2 acres of Bangor Memorial Park to the local school district for erection of a new elementary school. Bangor Memorial Park was officially dedicated as a memorial to veterans of United States wars by way of Borough Ordinance No. 416 in June 1950.[9] In December 1987, the Borough Council voted to convey a 1.2–acre section of the park to the school district, which voted to accept it. In October 1988, the Borough asked the Orphans' Court to approve the conveyance pursuant to Section 4 of the Donated or Dedicated Property Act, 53 P.S. § 3384. The Borough sought to replace the tract of land with a 3.6–acre tract that it owned. Taxpayers opposed the conveyance, hearings were held, and, in December 1988, the Orphans' Court denied the request for conveyance and dismissed the Borough's petition, determining that the Act was not applicable where there had been a formal dedication and the Borough had accepted the land for use as a public park. In this regard, the Orphans' Court specifically stated:

> It is obvious to this court that the phrase "... where no formal record appears as to acceptance by the political division ..." [53 P.S. § 3382] acts as a modifier to the language that directly precedes it. This finding is not only grammatically correct, but as the cited case indicates, it is also the legal, statutory construction required under the rules of construction, supra. Thus, 53 P.S. § 3381 et seq. is applicable only when there has been no acceptance by, and dedication of, land for use as a public facility. It is not disputed that on June 5, 1950, pursuant to ordinance no. 416, the Borough of Bangor formally dedicated the existing Bangor Memorial Public Park as a public park. This action by the Bangor Borough Council constitutes the formal dedication of the park which had been previously acquired for public use as a park in the 1930's. This formal acceptance and dedication by the political subdivision of land to the public for use as a park removes the proposed 1.2–acre conveyance from the parameters of 53 P.S. § 3381. Simply stated, the court holds that 53 P.S. § 3381 et seq., does not apply to the proposed conveyance of the 1.2–acre parcel of Bangor Memorial Park and, therefore, the conveyance must be judged, instead, solely by common-law principles applicable to land held as a public trust.

*Bangor I*, 4 Pa. D. & C.4th at 350–51 (footnotes omitted).

---

**9.** The original parcel of land that comprised a portion of Bangor Memorial Park had been deeded to the Borough in the 1930s.

Nevertheless, Appellants assert that this court's more recent decision in *White v. Township of Upper St. Clair*, 799 A.2d 188 (Pa.Cmwlth.2002), conflicts with *Bangor II* in that it supports their contention that the Donated or Dedicated Property Act applies even where property has been formally dedicated. We note that, while the *White* court acknowledged, without any hint of a negative reference, our decision in *Bangor II*, the specific question presented in *White* with respect to the Donated or Dedicated Property Act was "whether Residents may compel the Township to make application under the Donated or Dedicated Property Act or enforce the Township's duty under the Act[.]" *White*, 799 A.2d at 192. By contrast, *Bangor II* did not address the specific question of resident standing to enforce the statutory duty of a political subdivision as set forth in Section 3 of the Donated or Dedicated Property Act. It simply considered whether the Donated or Dedicated Property Act was applicable on the facts of the case at hand. Such is the issue presently before us. Moreover, unlike in *Bangor II* and the case at bar, the dedication of the park in *White* did not involve the passage of an ordinance evincing any formal intent to dedicate and accept the land therein for public purposes. Moreover, to the extent that language in *White* is directly in conflict with *Bangor II*, it must be considered to be *obiter dicta* for two reasons. First, the *White* court noted that "[t]he statutory duty [under the Donated or Dedicated Property Act] is redundant of the common law duty [under the deed restrictions] and its enforcement does not entitle Residents to relief beyond that which may be obtained under Count I." 799 A.2d at 200.

Thus, any determination as to the Act was unnecessary to the result. Moreover, the panel of this court in *White* was clearly bound by the prior published opinion in *Bangor II*, which directly decided the issue now before the court, and so cannot be read as overruling that decision. Because this panel is similarly bound by *Bangor II*, we are constrained to agree with common pleas that based on Appellants' own averments of the formal dedication of South Side, the Donated or Dedicated Property Act does not apply here.[10]

█ We likewise reject Appellants' claim that Appellee's transfer of South Side was an ultra vires act because File Of The Council No. 92 does not authorize transfer of South Side by the Authority. This argument fails where: (1) the ordinance clearly authorizes the transfer of South Side *to* the Authority; (2) Section 9(k) of the Urban Redevelopment Law, 35 P.S. § 1709(k), authorizes the Authority "[t]o sell, lease or otherwise transfer any real property located outside of a redevelopment area";[11] and (3) Act 52 provides for the release of the Project 70 restrictions and authorizes "sale of said lands by the Redevelopment Authority of the City of Scranton to the University of Scranton for a consideration of $1,150,000, which sum represents at least the fair market value of the property as determined by an appraisal." Although Appellants cryptically assert that the Authority is acting as a "straw-corporation to usurp municipal bidding requirements by the mayors [sic] own public admissions," Appellants' brief at 12, they raise no such concern in their complaint. Rather, because, on these pleadings, there is no genuine issue of material

10. To the extent that Appellants, in their brief, seek to argue common law principles relating to land held as a public trust, no cause of action was pled under a common law theory, as evidently was done in *White*.

11. The pleadings acknowledge that South Side is no longer in a blighted area. *See* C.R., Complaint, para. 41; Answer, para. 41.

fact and the moving party is entitled to judgment as a matter of law, we hold that common pleas properly granted the Authority's motion for judgment on the pleadings. Appellants simply have not met their burden of showing entitlement to the requested permanent injunction.[12] Accordingly, the order of the Common Pleas Court of Lackawanna County is hereby affirmed.

### ORDER

AND NOW, this 22nd day of September, 2006, the order of the Court of Common Pleas of Lackawanna County in the above-captioned matter is hereby AFFIRMED.

---

**12.** We have explained that, for review purposes, the question of whether a permanent injunction has been properly granted or denied depends on "whether the plaintiff established a clear right to injunctive relief as a matter of law." *Coghlan v. The Borough of Darby*, 844 A.2d 624, 627 n. 8 (Pa.Cmwlth. 2004).