SUMMIT TOWNSHIP INDUSTRIAL AND ECONOMIC DEVELOPMENT AUTHORITY; Summit Township; Summit Township Sewer Authority; Summit Township Water Authority; and Perry Hi–Way Hose Company

v.

The COUNTY OF ERIE, Pennsylvania; Erie County Gaming Revenue Authority; Millcreek Township; Millcreek Township Sewer Authority; Millcreek Township Water Authority; McKean Township; McKean Township Sewer Authority; McKean Township Water Authority; Waterford Township; Waterford Township Sewer Authority; Waterford Township Water Authority; and Greene Township

Appeal of: The County of Erie, Pennsylvania and Erie County Gaming Revenue Authority.

Commonwealth Court of Pennsylvania.

Argued May 6, 2009.
Decided Aug. 10, 2009.

Roger H. Taft, Erie, for appellants.

Daniel J. Pastore, Erie, for appellees, Summit Township Industrial and Economic Development Authority and Summit Township.

Andrew M. Schmidt, Erie, for appellees, McKean Township, McKean Township Sewer Authority, McKean Township Water Authority, Waterford Township, Waterford Township Sewer Authority, Waterford Township Water Authority and Greene Township.

1. The August 4, 2008, order is docketed at 1741 C.D. 2008.

2. The September 5, 2008, order is docketed at 1750 C.D. 2008.

3. In addition to the foregoing pleadings, the following pleadings were also filed: 1) on December 28, 2007, Appellees filed a complaint for declaratory judgment and a motion for preliminary injunction against Erie County; 2) on December 28, 2007, the common pleas court granted the preliminary injunction which enjoined Erie County from granting, paying or transferring any of the restricted gaming revenue; 3) the common pleas court also directed Erie County to file a response to the complaint; 4) on January 18, 2008, Erie County filed preliminary objections; 5) on February 1, 2008, Appellees filed objections and answers to Erie County's preliminary objections and also a motion to

BEFORE: LEADBETTER, President Judge, and McGINLEY, Judge, and PELLEGRINI, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and LEAVITT, Judge and BUTLER, Judge.

OPINION BY Judge McGINLEY.

Erie County and the Erie County Gaming Revenue Authority (ECGRA) (collectively, Appellants) appeal from an August 4, 2008, order of the Court of Common Pleas of Erie County (common pleas court) that granted the motion for judgment on the pleadings[1] filed by Summit Township Industrial and Economic Development Authority (STIEDA), Summit Township, Summit Township Sewer Authority, Summit Township Water Authority, and Perry Hi–Way Hose Company (collectively, Appellees) and from a September 5, 2008, order of the common pleas court that clarified in part its order of August 4, 2008.[2]

## I. Relevant Pleadings.[3]

### A. Amended Complaint.

On April 4, 2008, Appellees filed an amended complaint for declaratory judgment and alleged the following:

quash notice to attend for Summit Township's Supervisor; 6) on February 4, 2008, the common pleas court granted the motion and directed the parties to address the interpretation of the Gaming Act; 7) on February 4, 2008, Summit Township Water Authority and Sewer Authority and the Perry Hi–Way Hose Company sought to intervene; 8) on February 5, 2008, the common pleas court initially denied the petition to intervene and also denied most of Erie County's P.O.s; 9) on February 15, 2008, the common pleas court directed Erie County to file an answer; 9) on February 20, 2008, Appellees filed a motion for summary judgment and a reply to new matter; 10) on March 6, 2008, the motion to intervene was granted; 11) on March 4, 2008, Appellees withdrew the motion for summary judgment and filed a motion for judgment on the pleadings; 12) on March 17, 2008, Erie County filed a motion for leave to file amended answer and new matter; and 13) on March 26,

1. Plaintiff, Summit Township Industrial and Economic Development Authority ("STIEDA"), is a body politic and corporate created and existing pursuant to the Pennsylvania Economic Development and Financing Law, 73 Pa.Stat. § 371 *et seq.* . . . .

2. Plaintiff, Summit Township [4], is a second class township as defined in the Pennsylvania Second Class Township Code, 53 Pa.Stat. § 65101 *et seq* . . . . .

3. *STIEDA was incorporated by Summit Township.* (emphasis added).

. . . .

7. *Defendant, [t]he County of Erie*[5], *Pennsylvania ("Erie County"), is a Pennsylvania third class county* . . . . (emphasis added).

8. *Defendant, Erie County Gaming Revenue Authority ("ECGRA"), is a body politic and corporate created and existing pursuant to the Pennsylvania Economic Development and Financing Law, 73 Pa.Stat. § 371 et seq* . . . . . (emphasis added).

. . . .

26. *On July 5, 2004, the Pennsylvania Legislature enacted the Pennsylvania Race Horse Development and Gaming Act, 4 Pa. Cons.Stat. § 110l et seq. (the "Gaming Act").* (emphasis added).

27. *In accordance with 4 Pa. Cons. Stat. § 1302, a Category 1 gaming license has been issued to Presque Isle Downs, Inc., to operate Presque Isle Downs & Casino ("Presque Isle Downs"), as a licensed facility.* (emphasis added).

28. *Presque Isle Downs' facility is located* at 8199 Perry Highway in *Summit Township, Erie County,* Pennsylvania. (emphasis added).

29. Presque Isle Downs' facilities include a thoroughbred race track.

30. *Presque Isle Downs commenced operations on or about February 28, 2007, which operations included wagering.* (emphasis added).

31. *Presque Isle Downs' facilities are located entirely within Summit Township.* (emphasis added).

32. *Summit Township is designated as a second class township* under the Pennsylvania Municipalities Planning Code, as provided in 53 Pa.Stat.Ann. § 65201. (emphasis added).

33. *The municipalities which are contiguous to Summit Township are Millcreek Township, McKean Township, Greene Township and Waterford Township.* (emphasis added).

34. *Pursuant to § 1403(c)(2)(ii)(D) of the Gaming Act . . . and because Presque Isle Downs is a Category 1 licensed facility with a thoroughbred race track located in a county of the third class, one percent (1%) of the gross terminal revenue from Presque Isle Downs, plus one-half of the excess revenue arising as a consequence of the budgetary limitation in 4 Pa.Cons.Stat. § 1403(c)(3)(v), is to be distributed "to the county hosting the licensed facility . . . for the purpose of municipal grants within the county in which the licensed facility is*

2008, Appellees filed a motion for leave to file amended complaint, join parties, and amend caption.

**4.** Summit Township Sewer Authority and Water Authority, and Perry Hi-way Hose Company were also Plaintiffs in the amended complaint.

**5.** Millcreek Township, Millcreek Township Sewer Authority and Water Authority, McKean Township, McKean Township Sewer Authority and Water Authority, Waterford Township, Waterford Township Sewer Authority and Water Authority, and Green Township were also defendants to the amended complaint.

*located* (the Restricted Gaming Revenue"). (emphasis added).

35. *As a result of the operation of Presque Isle Downs during 2007, Erie County has been receiving Restricted Gaming Revenue.* (emphasis added).

. . . .

37. *It is believed, and therefore averred, that Erie County currently holds at least $5,138,961.77 in Restricted Gaming Revenue received from the operation of Presque Isle Downs during 2007.* (emphasis added).

. . . .

39. *Summit Township has designated and appointed STIEDA*[6] *to act on behalf of Summit Township in seeking grants of Restricted Gaming Revenue under § 1403(c)(2)(v).* (emphasis added).

40. *Since Presque Isle Downs is located in Summit Township, Summit Township, through STIEDA, is authorized to seek and be awarded grants from the Restricted Gaming Revenue pursuant to the first sentence of § 1403(c)(2)(v).* (emphasis added).

41. Summit Township, as the municipality in which Presque Isle Downs is located, is authorized to seek and be awarded grants from the Restricted Gaming Revenue pursuant to the first sentence of § 1403(c)(2)(v).

42. Under Erie County's ordinances as described below, public authorities are eligible to receive grants from the Restricted Gaming Revenue (Report, *infra*, p. 7), and therefore under Erie County's ordinances as described below, Summit Township Sewer Authority and Summit Township Water Authority are eligible to receive grants from the Restricted Gaming Revenue.

. . . .

44. As of September 12, 2007, although Erie County had received Restricted Gaming Revenue prior to that date, Erie County had not adopted any policy or procedure relating to the application for or award of grants pursuant to § 1403(c)(2)(v), and it had not designated any "economic development or redevelopment authority" to administer the grants in accordance with the second sentence of § 1403(c)(2)(v).

45. *On September 12, 2007, STIEDA submitted to Erie County seven applications for grant funding from the Restricted Gaming Revenue . . . .* (emphasis added).

46. *STIEDA believes that each of the seven applications for grant funding submitted on September 12, 2007, meets the criteria for grant funding under § 1403(c)(2)(v).* (emphasis added)

. . . .

48. Erie County has not responded to or made any decision with respect to any of the seven grant applications submitted by STIEDA on September 12, 2007.

49. *On December 18, 2007, County Council of Erie County ("County Council")* approved the passage of Ordinance No. 165 of 2007, entitled "Authorizing the Organization of the Erie County Gaming Revenue Authority."* (emphasis added).

50. On December 26, 2007, the County Executive of Erie County (the "County Executive"), signed Ordinance No. 165 of 2007, thereby enacting that ordinance. A copy of Ordinance No. 165 of 2007 is attached to this Amended Complaint as Exhibit 2.

---

**6.** STIEDA also filed a motion for preliminary injunction which was granted by the common pleas court and Erie County was enjoined from "making any grants pursuant to [Section 1403(c)(2)(v) of the Gaming Act] from any of the restricted gaming revenue received by the County of Erie" until further notice.

51. *On December 18, 2007, County Council approved the passage of Ordinance No. 166 of 2007, entitled "Adoption of the Erie County Gaming Revenue Committee Report."* (emphasis added).

52. On December 26, 2007, the County Executive signed Ordinance No. 166 of 2007, thereby enacting that ordinance . . . .

. . . .

55. *On December 18, 2007, County Council approved the passage of Ordinance No. 167 of 2007, entitled "Amending the Administrative Code of Erie County."* (emphasis added).

. . . .

57. By adopting Ordinance No. 166 of 2007, Erie County, through County Council and the County Executive, expressly approved "the gaming structures delineated in the Erie County Gaming Revenue Committee Report", which report is appended to Ordinance No. 166 of 2007.

58. *In Ordinance No. 165 of 2007, Erie County authorized the formation of ECGRA.* (emphasis added).

59. At the time this action was commenced, ECGRA was not yet in existence and therefore ECGRA could not be made a party to this litigation at the time this action was commenced.

60. *By the adoption of Ordinance Nos. 165, 166 and 167, Erie County has designated ECGRA as the "economic development or redevelopment authority" to administer grants of the Restricted Gaming Revenue pursuant to the second sentence of § 1403(c)(2)(v).* (emphasis added).

61. By the adoption of ordinance No. 166, Erie County has expressly adopted the report of the Erie County Gaming Revenue Committee (the "Report").

62. By the adoption of Ordinance No. 166, Erie County may have intended to adopt the Program Guidelines which are Exhibit 4 to this Complaint.

. . . .

*Count One*

66. In the Report, Erie County adopts the following interpretation of the third sentence of § 1403(c)(2)(v).

According to the Gaming Act, the grants shall be used to fund the costs of:

- Human Services
- Infrastructure improvements
- Facilities
- Emergency services
- Health
- Public safety expenses associated with the licensed facility operations.

\* \* \* \*

The following are the definitions of the uses of restricted funds established by the Committee:

1. *Human Services*—services for the betterment of mankind. (emphasis added).

2. *Infrastructure improvements*—capital costs for facilities supporting the basic function of society such as roads, power plants, transportation, sewer and water systems, and communication systems. (emphasis added).

3. *Facilities*—Buildings and other structures. (emphasis added).

4. *Emergency Services*—Capital and operational costs for providing Police, Fire & public safety services. (emphasis added).

5. *Health*—Dealing with physical and mental well-being; disease prevention. (emphasis added).

6. *Public safety expenses* associated with the licensed facility operations—eliminating any safety concerns result-

ing from the addition of the licensed facility in the county. (emphasis added). The above restricted funds purpose interpretation allows Erie County flexibility in awarding grants and determining for what purpose the grants can be used. There is no specific reference to using the funds for community and economic development, but certainly those issues are captured within the intent of the six categories.

Report, pp. 1–3.

. . . .

67. Pursuant to this interpretation of the Gaming Act as adopted by Erie County, grants of Restricted Gaming Revenue can be awarded to fund the costs of "human services, infrastructure improvements, facilities, emergency services [and] health" even if those costs are not "associated with licensed facility operations."

. . . .

69. *It is the position of Plaintiffs [Appellees] that* the correct and lawful interpretation of the third sentence of § 1403(c)(2)(v) is that all grants from the Restricted Gaming Revenue must meet two criteria: *(1) the grants must be used to fund the costs of human service, infrastructure improvements, facilities, emergency services, or health and public safety expenses, and (2) such costs of human services, infrastructure improvements, facilities, emergency services, or health and public safety expenses must be associated with the licensed facility operations at Presque Isle Downs.* (emphasis added).

70. It is the position of Plaintiffs [Appellees] that Erie County's interpretation of the third sentence of § 1403(c)(2)(v), which is that grants from the Restricted Gaming Revenue can be used to the [sic] fund the costs of human services, infrastructure improve-

ments, facilities, emergency services or health, regardless of whether such costs of human services, infrastructure improvements, facilities, emergency services or health are associated with the licensed facility operations at Presque Isle Downs, is unlawful and inconsistent with the Gaming Act.

71. *Plaintiffs [Appellees] believe there is a real and present controversy between them and Erie County as to the correct and lawful interpretation of the third sentence of § 1403(c)(2)(v).* (emphasis added).

. . . .

74. To resolve the controversy between the parties, and in accordance with 42 Pa.Cons.Stat. § 7533, Plaintiffs [Appellees] *request a declaration by this Court that all grants from the Restricted Gaming revenue made pursuant to 4 Pa. Cons.Stat. § 1403(c)(2)(v) must meet two criteria: (1) the grants must be used to fund the costs of human services, infrastructure improvements, facilities, emergency services, or health and public safety expenses, and (2) such costs of human services, infrastructure improvements, facilities, emergency services, or health and public safety expenses must be associated with the licensed facility operations at Presque Isle Downs.* (emphasis added).

. . . .

### Count Two

77. In the Report, Erie County adopts an interpretation of the third sentence of § 1403(c)(2)(v) which limits grant awards of Restricted Gaming Revenue to "no more than 50% of the required funds." (Report, p. 7; *see also* Exhibit 5 and Erie County Administrative Code, Section 5, § IV.1.F.5(b)(1), (4)).

. . . .

79. *It is the position of Plaintiffs [Appellees] that the correct and lawful interpretation of the third sentence of § 1403(c)(2)(v) is that if during the fiscal year Erie County has received applications for grants from the Restricted Gaming Revenue which are appropriate for funding during the fiscal year in accordance with § 1403(c)(2)(v), then all available Restricted Gaming Revenue must be used to fund those grant applications during that fiscal year, even if the funding of those grant applications results in funding more than 50% of the amount requested in any or all of the grant applications ....* (emphasis added).

80. It is the position of Plaintiffs [Appellees] that Erie County's interpretation of the third sentence of § 1403(c)(2)(v), which is that regardless of the amount of Restricted Gaming Revenue requested in applications for grants from the Restricted Gaming Revenue in a fiscal year; and regardless of whether the applications for grants from the Restricted Gaming Revenue in a fiscal year are appropriate for funding during the fiscal year in accordance with § 1403(c)(2)(v), Erie County will never fund more than 50% of any one grant application, is unlawful and inconsistent with the Gaming Act.

. . . .

84. *To resolve the controversy between the parties, and in accordance with 42 Pa.Cons.Stat. § 7533, Plaintiffs [Appellees] request a declaration by this Court that all available Restricted Gaming Revenue must be used to fund grant applications which are submitted and appropriate for funding in accordance with § 1403(c)(2)(v) during a fiscal year, even if the funding of those grant applications results in funding more than 50% of the amount requested in*

*any or all of the grant applications.* (emphasis added).

. . . .

### Count Three

89. It is the position of Plaintiffs [Appellees] that the correct and lawful interpretation of the first sentence of § 1403(c)(2)(v) is that grants from the Restricted Gaming Revenues may not be awarded to units of local government or public authorities created by units of local government other than the Erie County, Summit Township, Millcreek Township, McKean Township, Greene Township and Waterford Township.

. . . .

94. *To resolve the controversy between the parties, and in accordance with 42 Pa.Cons.Stat. § 7533, Plaintiffs [Appellees] request a declaration by this Court that pursuant to 4 Pa.Cons.Stat. § 1403(c)(2)(v), grants for Restricted Gaming Revenue may not be awarded to units of local government or public authorities created by units of local government other than Erie County, Summit Township, Millcreek Township, Greene Township and Waterford Township.* (emphasis added).

Amended Complaint for Declaratory Judgment, April 4, 2008, 27, 2008, Paragraphs 1–3, 7–8, 26–35, 37, 39–42, 44–46, 48–52, 55, 57–62, 66–67, 69–71, 74, 77, 79–80, 84, 89, and 94 at 2–3, 6–16, and 18–19; Reproduced Record (R.R.) at 8a–9a, 11a–22a, and 24a–25a.

### B. Answer And New Matter.

On April 16, 2008, Appellants responded and asserted in new matter:

95. Plaintiff STIEDA is an industrial and economic development authority, rather than a "county" or a "municipality" as defined at Section 1103 of the

Pennsylvania Gaming Act, 4 Pa.C.S.A. § 1103.

96. Although plaintiff STIEDA claims at Paragraph 39 of the Amended Complaint to have been designated and appointed by plaintiff Summit Township to seek municipal grants of "Restricted Gaming Revenue" under Section 1403(c)(2)(v) of the Pennsylvania Gaming Act, neither Section 1403(c)(2)(v) nor any other provision of the Act authorizes a municipality to designate an authority, such as STIEDA, to seek, be awarded and/or distribute municipal grants, which action would constitute a diversion of public funds to an entity that is not a "municipality" or a "county" within the meaning of Section 1403(c)(2)(v).

97. Under Section 376 of the Pennsylvania Economic Development and Financing Law, 73 P.S. § 376, the purpose of plaintiff STIEDA is limited to, "acquiring, holding, constructing, improving, maintaining, owning, financing and leasing, either in the capacity of lessor or lessee, projects." 73 Pa.C.S.A. § 376.

98. Sections 376 of the Pennsylvania Economic Development and Financing Law does not authorize plaintiff STIEDA to act on behalf of Summit Township to seek, be awarded, and to distribute municipal grants of funds received by defendant Erie County—the host county—from the State Gaming Fund.

. . . .

105. By submitting the PIDI [Presque Isle Downs, Inc.] Application for Gaming Revenue Grant Funding to defendant Erie County, asserting that PIDI has a right to receive $13,785,661.95 in public funds paid to Erie County—the host county—from the State Gaming Fund as reimbursement for alleged expenses incurred by PIDI for its private project, Presque Isle Downs, and filing the Amended Complaint against Erie County and ECGRA, plaintiff STIEDA is attempting to facilitate the return to PIDI of tax payments that PIDI was required to make to the Commonwealth of Pennsylvania as condition of its Category 1 gaming license to operate Presque Isle Downs under Section 1403(b) of the Pennsylvania Gaming Act.

. . . .

122. Under Section 1403(c)(3)(v) of the Pennsylvania Gaming Act, Summit Township—the host township—will receive an annual distribution of 2% of the gross terminal revenue of Presque Isle Downs or $10,00,000, [sic] whichever is greater, up to an amount not to exceed 50% of its annual total budget for fiscal year 2003–2004, adjusted for inflation in subsequent years.

123. As a result of the construction and operation of Presque Isle Downs, plaintiff Summit Township will receive additional real estate tax revenue as indicated in the documents titled, "Presque Isle Downs Assessment Changes dated August 23, 2007," and "Presque Isle Downs Assessment and Taxes 2007–2008 County/Township," copies of which are attached hereto as Exhibits G and H, respectively.

. . . .

128. *Defendant Erie County's interpretation of the authorized use of funds received by Erie County—the host county—from the State Gaming Fund for the cost of human services, infrastructure improvements, facilities, emergency services, infrastructure improvements, facilities, emergency services and health, even if those costs are not, "associated with licensed facility operations," is based on both Section 1403(c)(2)(v) and Section 1403(c)(2)(ix) of the Pennsylvania Gaming Act.* (emphasis added).

129. *Under Section 1403(c)(2)(v) of the State Gaming Act, only the costs of pub-*

lic safety expenses must be associated with licensed facility operations of Presque Isle Downs in order to be eligible for municipal grant funding, and Section 1403(c)(2)(ix) contains no limitation on how Erie County—the host county—can use funds received from the State Gaming Fund under Section 1403(c)(2)(ii)(D) through intergovernmental cooperative agreements. (emphasis added).

. . . .

131. Defendants Erie County and ECGRA have broad discretion under Section 1403(c)(2)(v) and/or Section 1403(c)(2)(ix) to administer funds received by Erie County—the host county—from the State Gaming Fund . . . .

. . . .

133. There is no requirement in Section 1403(c)(2)(v) of the Pennsylvania Gaming Act that any and all applications for funds paid to defendant Erie County—the host county—from the State Gaming Fund be approved and/or that the full amount of available funds be distributed to fund grant applications in any particular fiscal year. (emphasis added).

134. Section 1403(c)(2)(v) of the Pennsylvania Gaming Act recognizes that defendant Erie County—the host county—has discretion not to fund all grant applications in any particular year by providing a mechanism for Erie County to transfer uncommitted funds to ECGRA for distribution in later years. (emphasis added).

. . . .

136. Section 1403(c)(2)(ix) of the Pennsylvania Gaming Act expressly provides that nothing in Section 1403(c)(2)(v), or elsewhere in Section 1403(c), shall prevent defendant Erie County from entering into intergovernmental cooperative agreements with other jurisdictions for sharing money received by Erie County—the host county—from the State Gaming Fund. (emphasis added).

. . . .

137. Section 1403(c)(2)(v) and Section 1403(c)(2)(ix) of the Pennsylvania Gaming Act allow funds paid to defendant Erie County—the host county—from the State Gaming Fund to be distributed to local government units, authorities and other qualifying entities, without limitation to Erie County, Summit Township and the municipalities contiguous to Summit Township, because: (1) Section 1403(c)(2)(v) expressly authorizes municipal grants to be paid to Erie County, and Erie County can decide how to use the funds throughout Erie County including, but not limited to, paying some or all of those funds to other local government units, authorities and other qualifying entities; and/or (2) Section 1403(c)(2)(v) expressly provides that nothing in Section 1403(c)(2)(v), or elsewhere in Section 1403(c), prevents Erie County from entering into intergovernmental cooperative agreements with other jurisdictions for sharing this money. (emphasis added).

Defendants The County Of Erie, Pennsylvania's And Erie County Gaming Revenue Authority's Answer And New Matter To Amended Complaint For Declaratory Judgment, April 16, 2008, Paragraphs 95–98, 122–123, 128–129, 131, 133–134, and 136–137 at 38–39, 45, and 47–49; R.R. at 169a–170a, 177a, and 179a–181a.[7]

**7.** On April 24, 2008, Millcreek Township, Millcreek Township Sewer Authority, and Millcreek Township Water Authority filed an answer and new matter to Appellees' amended complaint. *See* R.R. at 355a–357a. On April 2008, McKean Township, McKean Township Sewer Authority, McKean Township Water Authority, Waterford Township,

### C. Reply To New Matter.

On May 23, 2008, Appellees replied to Appellants' new matter as well as to Mill Creek Township, and McKean Township. *See* R.R. at 379a–400a, 401a–403a, 404a–410a.

### D. Renewed Motion For Judgment On The Pleadings.

On June 17, 2008, Appellees renewed the motion for judgment on the pleadings:

. . . .

6. The Pleadings in response to the Amended Compliant in this action have now closed.

7. *In their Amended Complaint, Plaintiffs seek declarations as to the proper construction and interpretation of § 1403 of the Pennsylvania Race Horse Development and Gaming Act, 4 Pa.Cons.Stat. § 1403, and declarations that Erie County Ordinance Nos. 165, 166 and 167 of 2007 are inconsistent with that Act.* (emphasis added).

8. *This action presents a question of law as to whether Erie County Ordinance Nos. 165, 166 and 167 of 2007 are consistent with 4 Pa.Cons.Stat. § 1403.* (emphasis added).

9. *Based on the facts admitted in the pleadings, Plaintiffs are entitled to the declaratory relief they seek in their Amended Complaint as a matter of law.* (emphasis added).

Plaintiff's Renewed Motion For Judgment On The Pleadings, June 17, 2008, Paragraphs 6–9 at 2; R.R. at 441a.

### E. Response To Motion For Judgment On The Pleadings.

On July 21, 2008, Appellants responded to Appellees' motion for judgment on the pleadings:

Waterford Township Sewer Authority, Waterford Township Water Authority, and Greene County filed an answer and new matter to

(1) *[T]he additional 1% of gross terminal revenue paid to Erie County, the host county, under Section 1403(c)(2)(ii)(D) of the Pennsylvania Gaming Act for the purpose of municipal grants within Erie County is not restricted to fund only the costs of human services, infrastructure improvements, facilities, emergency serves, health and public safety expenses associated with the operation of Presque Isle Downs & Casino;* (emphasis added).

(2) [I]rrespective of any restrictions on municipal grant funding in Section 1403(c)(2)(v) of the Pennsylvania Gaming Act, *Section 1403(c)(2)(ix) authorizes Erie County to use intergovernmental cooperative agreements with other municipalities located throughout Erie County to distribute the additional 1% of gross terminal revenues paid to Erie County, the host county, under Section 1403(c)(2)(ii)(D);* (emphasis added).

(3) *Erie County and . . . County Gaming Revenue Authority, have broad discretion* to administer municipal grants under Section 1403(c)(2)(v) of the Pennsylvania Gaming Act including, but not limited to, the right *to decide not to award all available municipal grant funds within any particular fiscal year and the right to limit the amount of grants to 50% of the costs of a particular project or use;* (emphasis added) and

(4) [T]he additional 1% of gross terminal revenue paid to Erie County, the host county, under Section 1403(c)(2)(ii)(D) of the Pennsylvania Gaming Act for the purpose of municipal grants within Erie County is not restricted to fund projects or other uses

Appellees' amended complaint. *See also* R.R. at 360a–378a.

located only in Summit Township and its contiguous municipalities, but rather may be used to fund projects and uses throughout Erie County.

Defendants The County Of Erie, Pennsylvania's And Erie County Gaming Revenue Authority's Response In Opposition To Plaintiffs' Renewed Motion For Judgment On The Pleadings, July 21, 2008, Wherefore Clause, Paragraphs 1–4 at 4; R.R. at 449a.

## II. Common Pleas Court's Determination.

On August 4, 2008, the common pleas court entered judgment on the pleadings and concluded:

The Court finds that Summit unquestionably bears more of the burden as the actual physical location of the Casino. The Casino was erected in Summit and is operated in Summit. *Every day Summit and the four contiguous townships, bear the burdens (a.k.a. costs associated with the licensed facility) of traffic, water supply, sewerage, fire, rescue, and other emergency services, and other required infrastructure to run such a facility.* For the County to ignore those burdens (and their costs) and claim that the monies Summit receives should be adequate, or worse, assume that the four contiguous townships' taxpayers will foot the bill is extremely insensitive and unbalanced.

If the County is not careful, it may kill the golden goose (the Casino) with its refusal to award the required restricted funds, causing the costs associated with the Casino to be underfunded and ultimately shut the facility down .... (emphasis added).

Opinion of the Common Pleas Court, August 4, 2008, at 19.

On August 13, 2008, Appellants filed a motion for clarification of the common

pleas court's August 4, 2008, order. On September 3, 2008, the common pleas entered an order that granted in part and denied in part Appellants' motion for clarification:

. . . .

*Ordinance 165 ... ECGRA is still vested with the powers to administer the grants. If the Court had truly invalidated Ordinance 165 and ordered that ECGRA be dissolved, it would be inconsistent with the rest of the Court's directives ....* (emphasis added).

*Ordinance 166 ... appears to be the crux of the dispute between the parties here because it contains the language that this Court has ruled to be inconsistent with the requirements of the Gaming Act, particularly § 1403(c)(2)(v).*

Defendants are concerned that the procedures for administering the so-called "unrestricted gaming revenue" were invalidated when the Court found the procedure for administering the "restricted gaming revenue" to be inconsistent with the Gaming Act.

*Again, at no time during this litigation did Plaintiffs ask the Court to determine how the "unrestricted gaming revenue" should be administered. Only the administration of the "restricted gaming revenue" was before the Court.*

. . . .

*Ordinance No. 167 amended the Administrative Code of Erie County to reflect the newly Ordinances 165 and 166. If either Ordinance 165 or 166 were found invalid, Ordinance No. 167 would itself be invalid as well. Since this Court has found that Ordinance No. 166 provisions related to "restricted gaming revenue" to be invalid because they are inconsistent with the Gaming Act, Ordinance No. 167 will very likely have to be amended.* (emphasis added).

Order of the Court of Common Pleas, September 3, 2008, at 4–5.

### III. General Principles Of Statutory Construction.

Section 1921(a) of the Statutory Construction Act of 1972(Act), 1 Pa.C.S. § 1921(a), provides that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly" and that *"[e]very statute shall be construed, if possible, to give effect to all its provisions."* (emphasis added). Section 1903(a) of the Act, 1 Pa.C.S. § 1903(a), provides that *"[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage ...."* (emphasis added). Section 1922(1) of the Act, 1 Pa.C.S. § 1922(1), provides that "the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." Section 1923(b) of the Act, 1 Pa.C.S. § 1923(b), provides that *"[i]n no case shall the punctuation of a statute control or affect the intention of the General Assembly in the enactment thereof but punctuation may be used to aid construction thereof if the statute was finally enacted after December 31, 1964."* (emphasis added). Finally, Section 1923(c) of the Act, 1 Pa.C.S. § 1923(c), provides that *"[w]ords and phrases which may be necessary to the proper interpretation of a statute and which do not conflict with its obvious purpose and intent, nor in any way affect its scope and operation, may be*

*added in the construction thereof."* (emphasis added).

### IV. Whether Section 1403(c)(2)(v) Of The Gaming Act Requires All Grants Of Restricted Gaming Revenue Be Applied To The Costs That Are Associated With Operations Of The Licensed Facility?

■ Initially, Appellants contend [8] that the common pleas court erred when it determined that the costs of human services, infrastructure improvements, facilities, emergency services, and health and public safety expenses associated with the operation of Presque Isle Downs and Casino are only eligible for municipal grant funds under Section 1403(c)(2)(v) of the Gaming Act.[9]

#### A. Relevant Sections Of The Gaming Act.

Section 1403(c)(2)(ii)(D) of the Gaming Act, 4 Pa.C.S. § 1403(c)(2)(ii), provides:

The department shall:

. . . .

(2) From the local share assessment established in subsection (b) make quarterly distributions among the counties hosting a licensed facility in accordance with the following schedule:

. . . .

(ii) *If the licensed facility is a Category 1 licensed facility and is located at a thoroughbred racetrack and the county*

---

**8.** "[A] motion for judgment on the pleadings should be granted only when the pleadings show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Vutnoski v. Redevelopment Authority of the City of Scranton,* 941 A.2d 54, 57 n. 7. (Pa.Cmwlth.2006). "When reviewing common pleas' decision to grant judgment on the pleadings, our review is plenary." *Id.* at 57 n. 7. "An appellate court is required to accept as true all well-pled facts of the non-moving party, while con-

sidering as adverse to him only the facts that he specifically admits." *Id.* at 57 n. 7. This Court "will uphold a decision to grant a motion for judgment on the pleadings only where the movant's case is so clear that a trial would be fruitless." *Id.* at 57 n. 7.

**9.** Appellants and Appellees agree that there are only three issues raised on appeal, and this Court shall address each one seriatim.

*in which the licensed facility is located is:*

. . . .

(D) A county of the third class: *1% of the gross terminal revenue*[10] *to the county hosting the licensed facility from each such licensed facility. An additional 1% of the gross terminal revenue to the county hosting the licensed facility from each such licensed facility for the purpose of municipal grants within the county in which the licensee is located.*[11] (emphasis added).

Pursuant to Section 1403(c)(2)(ii)(D) of the Gaming Act, 4 Pa.C.S. § 1403(c)(2)(ii)(D), the first one percent of the "gross terminal revenue" is to be paid to Erie County "without restriction" and Erie County has unlimited use of these proceeds. These proceeds or monies are referred to as *"unrestricted gaming revenue."* The second one percent of the "gross terminal revenue" under Section 1403(c)(2)(ii)(D) of the Gaming Act, 4 Pa. C.S. § 1403(c)(2)(ii)(D), and which is at issue here, is to be used "for the purpose of municipal grants" within the county where the licensee is located. This second one percent of the "gross terminal revenue" is the *"restricted gaming revenue"* and must, first, be used "for the purpose of municipal grants" and, second, be used within the county hosting the facility as required under Section 1403(c)(2)(ii)(D) of the Gaming Act.

Section 1403(c)(3)(v) of the Gaming Act, 4 Pa.C.S. § 1403(c)(3)(v), provides:

(c) . . . The department shall:

. . . .

(3) From the local share assessment established in subsection (b), make quarterly distributions among the municipalities, including home rule municipalities, hosting a licensed facility in accordance with the following schedule:

. . . .

(v) To a township of the second class hosting a licensed facility, other than a Category 3 licensed facility, *2% of the gross terminal revenue or $10,000,000 annually,* whichever is greater, shall be paid by each licensed gaming entity operating a licensed facility located in the township, subject, however, to the budgetary limitation in this subparagraph. *The amount allocated to the designated municipalities shall not exceed 50% of their total budget for fiscal year 2003– 2004, adjusted for inflation in subsequent years by an amount not to exceed an annual cost-of-living adjustment calculated by applying the percentage change in the Consumer Price Index immediately prior to the date the adjustment is due to take effect.* Any remaining money shall be collected by the department from each licensed gaming entity and distributed in accordance with paragraph (2) based upon the clas-

---

**10.** Section 1103 of the Gaming Act, 4 Pa.C.S. § 1103, defines the term "gross terminal revenue" as:

The total of cash or cash equivalent wagers received by a slot machine minus the total of:

(1) Cash or cash equivalents paid out to patrons as a result of playing a slot machine which are paid to patrons either manually or paid out by the slot machine.

(2) Cash paid to purchase annuities to fund prizes payable to patrons over a peri-

od of time as a result of playing a slot machine.

(3) Any personal property distributed to a patron as the result of playing a slot machine. This does not include travel expenses, food, refreshments, lodging or services.

**11.** There is no dispute that Erie County is a county of the third class and that Presque Isle Downs is a Category 1 licensed facility.

sification of county where the licensed facility is located . . . . (emphasis added).

Here, because of Summit Township's budget:

[I]t cannot receive the full '2% of the gross terminal revenue [under Section 1403(c)(3)(v) of the Gaming Act] or $10,000,000 annually, whichever is greater.' Rather, Summit Township can receive only approximately $1,000,000 per year before reaching the budget cap. As a consequence, under this provision, the excess monies that would have otherwise gone to Summit Township, which are approximately $9,000,000 in a full year, are to be 'distributed in accordance with paragraph (2) [i.e., § 1403(c)(2)] based upon the classification of county where the licensed facility is located.' Section 1403(c)(3)(v) . . . . Thus, in a full year of operation of Presque Isle Downs, approximately $9,000,000 of the funds which would be distributed to Summit Township as unrestricted funds but for the 'budget cap' in § 1403(c)(3)(v), are re-distributed pursuant to § 1403(c)(2)(ii)(D), by which one-half is paid directly to Erie County 'unrestricted' pursuant to the first sentence of § 1403(c)(2)(ii)(D), and one-half is paid to Erie County 'for the purpose of municipal grants' pursuant to the second sentence of § 1403(c)(2)(ii)(D). Because of the budget limit applicable to Summit Township, substantially more than 1% of the gross terminal revenue from Presque Isle Downs is available for 'municipal grants,' the distribution of which is governed by § 1403(c)(2)(v). (footnotes and cite omitted).

Brief for Appellees at p. 19–20.[12]

### B. Section 1403(c)(2)(v) Of The Gaming Act.

At issue before this Court is the interpretation of Section 1403(c)(2)(v), 4 Pa.C.S. § 1403(c)(2)(v) of the Gaming Act. Section 1403 of the Gaming Act provides:

(c) Transfers and distributions.—The department shall:

. . . .

(2) From the local share assessment established in subsection (b), make quarterly distributions among the counties hosting a licensed facility in accordance with the following schedule:

. . . .

(v) Unless otherwise specified, for purposes of this paragraph *money designated for municipal grants within a county, other than a county of the first class, in which a licensed facility is located shall be used to fund grants to the municipality in which the licensed facility is located, to the county in which the licensed facility is located and to the municipalities which are contiguous to the municipality in which the licensed facility is located and which are located within the county in which the licensed facility is located.* Grants shall be administered by the county through its economic development or redevelopment authority in which the licensed facility is

12. In essence, Erie County receives a greater amount of both "restricted gaming revenue" and "unrestricted gaming revenue" because Presque Isle Downs is located in Summit Township which has a small annual budget. In 2007, Summit Township would receive only approximately $976,686.44 in revenue under the budget cap. *See* Appellees Reply to New Matter, Paragraph 122 at 11; R.R. at 389a. However, if Presque Isle Downs was located in the City of Erie, the City would receive the full $10,000,000 of the local municipality share. Erie County would receive one percent of the "unrestricted" gross terminal revenue under the first sentence of Section 1403(c)(ii)(D) of the Gaming Act and one percent of the "restricted" gross terminal revenue under the second sentence of Section 1403(c)(ii)(2). Brief for Appellees at p. 20 n. 2.

located. *Grants shall be used to fund the costs of human services, infrastructure improvements, facilities, emergency services, health and public safety expenses associated with licensed facility operations.* If at the end of a fiscal year uncommitted funds exist, the county shall pay to the economic development or redevelopment authority of the county in which the licensed facility is located the uncommitted funds. (emphasis added).

#### C. Appellants' Statutory Interpretation Of Section 1403(c)(2)(v).

Appellants assert that the express legislative intent of the General Assembly concerning municipal grants under Section 1102 of the Gaming Act, 4 Pa.C.S. § 1102[13], is to promote and provide economic development opportunities to the citizens of the Commonwealth, not just the interest of some. Specifically, Appellants pose that Section 1402 of the Gaming Act is paramount to Section 1403(c)(2)(v) of the Gaming Act. Therefore, Appellants may award municipal grants under Section 1403(c)(2)(v) of the Gaming Act to any applicant for the costs of human services, infrastructure improvements, facilities, emergency services, and health even if the costs have absolutely no connection to the licensed facility. On the other hand, if an applicant requests a municipal grant for "public safety expenses" then the applicant must demonstrate that the public safety expenses are "associated with licensed facility operations." Appellants assert that this is a plausible interpretation because of the General Assembly's concern that legalized gambling will attract a criminal element to the community.[14]

#### D. Appellees' Statutory Interpretation Of Section 1403(c)(2)(v).

Appellees do not dispute that the General Assembly's intent behind Section 1102 of the Gaming Act was to promote economic development opportunities to the citizens of the Commonwealth. However, Appellees counter that Section 1102 of the Gaming Act does not authorize Appellants to distribute municipal grants under Section 1304(c)(2)(v) of the Gaming Act "throughout the county" and to any applicant for any purpose including the costs of human services, infrastructure improvements, facilities, emergency services, and health. Appellees stress that it was the General Assembly's intent that under Section 1403(c)(2)(v) municipal grants are limited to the municipality where the licensed facility is located and the municipalities

---

**13.** Appellants cite to Section 1102 of the Gaming Act, 4 Pa.C.S. § 1102:

The General Assembly recognizes the following public policy purposes and declares that the following objectives of the Commonwealth are to be served by this part:

. . . .

(3) The authorization of limited gaming is intended to provide a significant source of new revenue to the Commonwealth to support property tax relief, wage tax reduction, economic development opportunities and other similar initiatives.

. . . .

(5) The authorization of limited gaming is intended to provide broad economic opportunities to the citizens of this Common-

wealth and shall be implemented in such a manner as to prevent possible monopolization by establishing reasonable restrictions on the control of multiple licensed gaming facilities in this Commonwealth.

. . . .

(10) The public interest of the citizens of this Commonwealth and the social effect of gaming shall be taken into consideration in any decision or order made pursuant to this part.

**14.** The parties agree that there is no legislative history to provide guidance to this Court concerning the statutory interpretation of Section 1403(c)(2)(v) of the Gaming Act, 4 Pa.C.S. § 1403(c)(2)(v).

"which are contiguous to the municipality where the licensed facility is located." Also, the General Assembly intended that the municipal grants will be used to fund, in addition to the cost of public safety, the cost of "human services, infrastructure improvements, facilities, emergency services, and health" "associated with licensed facility operations."

### E. Analysis.

■ This Court agrees with Appellees' statutory interpretation of Section 1403(c)(2)(v) that "[t]he plain and ordinary meaning of § 1403(c)(2)(v), and consideration of the purpose to be achieved by the statute, require that all municipal grants be associated with the licensed facility." Brief for Appellees at p. 28.

**First,** the first sentence of Section 1403(c)(2)(v) of the Gaming Act, 4 Pa.C.S. § 1403(c)(2)(v), provides that municipal grants are to be awarded "to fund grants to the municipality in which the facility is located, to the county in which the licensed facility is located and the municipalities which are contiguous to the municipality in which the licensed facility is located." Therefore, the first sentence of Section 1403(c)(2)(v) applies to Erie County, the host county, Summit Township, the host municipality, where Presque Isle Downs is located, and Millcreek Township, McKean Township, Greene Township, and Waterford Township, the municipalities which are contiguous to Summit Township. Clearly, only these municipalities are ini-

tially eligible for municipal grants pursuant to Section 1403(c)(2)(v).

**Second,** the General Assembly obviously considered that there was a likelihood Summit Township, and the contiguous municipalities would incur additional expenses associated with the operation of Presque Isle Downs.

**Third,** pursuant to the third sentence of Section 1403(c)(2)(v) of the Gaming Act those municipalities are only eligible for municipal grants when they establish that "the costs of human services, infrastructure improvements, facilities, emergency services, health and public safety expenses" are associated with the "licensed facility" or Presque Isle Downs.

**Fourth,** the modifying phrase "associated with licensed facility operations" applies to the words preceding because it is illogical for the modifying phrase, "associated with licensed facility operations", to only apply "to public safety expenses."

In *Commonwealth v. Rosenbloom Finance Corporation,* 457 Pa. 496, 325 A.2d 907 (1974), our Pennsylvania Supreme Court addressed a similar issue when it interpreted the now repealed corporate franchise law: [15]

> The issue is whether, in part (ii),[16] the phrase "of subsidiary corporation" modifies the immediately preceding phrase "of stock, securities, or indebtedness" or whether it modifies only the immediately preceding word "indebtedness." If the phrase "of subsidiary corporations"

---

**15.** Act of June 1, 1889, P.L. 420, *as amended,* 72 P.S. § 1871(e) (replaced by Act of March 4, 1971, P.L. ——, No. 2, art. VI, § 602, *as amended,* 72 P.S. § 7602(f)).

**16.** The entire section reads:

The term "holding company" shall mean any corporation (i) at least ninety per cent of the gross income of which for the taxable

> year is derived from dividends, interest, gains from the sale or other disposition of stock or securities and the rendition of management and administrative services to subsidiary corporations, and *(ii) at least sixty per cent of the actual value of the total assets of which consists of stock securities or indebtedness of subsidiary corporations.* (emphasis added).
> *Id.* at 498, 325 A.2d at 908.

modifies the phrase "of stock, securities or indebtedness" a corporation's assets consisting "of stock, securities" in non-subsidiary corporations should not be considered in determining the necessary sixty per cent requirement in part (ii). If, however, the phrase "of subsidiary corporations" modifies only the word "indebtedness" a corporation's assets consisting "of stock, securities" of *any corporation*—not necessarily a *subsidiary corporation*—should be considered.

. . . .

We do not find any ambiguity in the language "of stock securities or indebtedness of subsidiary corporations." Without any strain on the rules of grammar or any deviation from common and approved usage, the language of part (ii) means that the "stock" and "securities" mentioned as well as the "indebtedness" mentioned, must be "of subsidiary corporations." See Statutory Construction Act, 1 Pa.S. § 1903. The phrase "of subsidiary corporations" modifies "of stock, securities or indebtedness."

The appellee argues that we should utilize the rule of the last antecedent, a grammatical rule which is sometimes an aid in construing legislation. According to the appellee, the rule requires that the phrase "of subsidiary corporations" modify only the word "indebtedness." Sutherland's Statutory Construction gives the following explanation of the last antecedent rule:

"Referential and qualifying words, and phrases, where no contrary intention appears, refer solely to the last antecedent, which consists of 'the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence.' Thus a proviso usually is construed to apply to the provision or clause immediately preceding it. The rule is but another aid to discovery of intent or meaning, however, and not an inflexible and uniformly binding rule. *Where the sense of the entire act requires that a qualifying word or phrase apply to several preceding or even succeeding sections, the word or phrase will not be restricted to its immediate antecedent."*

C. Sands, 2A Sutherland's Statutory Construction § 47.33 (4th ed. 1973).

The last antecedent rule may sometimes be helpful but is not applicable to all cases. *"When several words are followed by a [modifying phrase] which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the [modifying phrase] be read as applicable to all"* . . . . In the statute in this case we have a phrase containing several words "stocks," "securities" and "indebtedness," which are followed by the modifying phrase "of subsidiary corporations." *The modifying phrase "of subsidiary corporations" is "applicable as much" to the words "stocks" and "securities" as it is to the word "indebtedness." The natural construction of part (ii), therefore, requires that the modifying phrase be read as applicable to all the words in the preceding phrase.* (emphasis in original and added, citations omitted).

*Id.* at 498–501, 325 A.2d at 909–10.

The rationale employed by our Supreme Court in *Rosenbloom* is clearly applicable here.[17] The modifying phrase "associated with licensed facility operations" is applicable, certainly as much to the words "costs

---

17. The common pleas court also rejected Appellants' argument that the "comma rule" and the "last antecedent rule" were applicable:

The County argues that the "comma rule" and the "last antecedent rule" should be applied to the interpretation of the disputed sentence. The "comma rule" provides

of human services, infrastructure improvements, facilities, emergency services [and] health" as it is to "public safety expenses." [18]

## V. Whether Section 1403(c)(2)(ix) Of The Gaming Act Authorizes Appellants To Enter Into Intergovernmental Cooperative Agreements With Other Jurisdictions Without Any Of The Restrictions Imposed By Section 1403(c)(2)(v) Of The Gaming Act?

■ Appellants next contend that the language of Section 1403(c)(2)(ix) of the Gaming Act, clearly authorizes them to enter into intergovernmental cooperative agreements with other municipalities regardless of the requirement of Section 1403(c)(2)(v) that municipal grants must be used first to fund the costs associated with the licensed facility and awarded to the host municipality and the other contiguous municipalities.

### A. Intergovernmental Cooperative Agreements.

First, 53 Pa.C.S § 2305 (Ordinance) provides

A local government[19] may enter into intergovernmental cooperation with or delegate any functions, powers or responsibilities to another governmental unit or local government *upon the passage of an ordinance by its governing body.* If mandated by initiative and referendum in the area affected, the local government shall adopt such an ordinance. (emphasis added).

53 Pa.C.S. § 2315 (Effect of joint cooperation agreements) provides:

*Any joint cooperation agreement shall be deemed in force as to any local government when the agreement has been adopted by ordinance by all cooperating local governments.* After adoption by all cooperating local governments, the agreement shall be binding upon the local government, and its covenants may be enforced by appropriate remedy by any one or more of the local governments against any other local government which is a party to the agreement. (emphasis added).

Finally, failure to adopt an ordinance "renders an intergovernmental agreement void." *Stein v. Department of Transportation,* 857 A.2d 719, 724 (Pa.Cmwlth. 2004).

■ In the present controversy, the record is devoid of any evidence that Erie County complied with 53 Pa.C.S. §§ 2305 and 2315 and entered into an intergovern-

---

where there is a comma before a modifying phrase, the phrase modifies all items in a series and not just the immediately preceding item. If there is no comma, the modifying phrase modifies the preceding item only. *According to the comma rule as applied by the County, the modifying phrase "associated with the licensed facility" modifies "public safety expenses" only.* The "last antecedent rule" provides that the modifying clause or phrase that follows several expressions applies only to the one expression that precedes it. *Accordingly to the last antecedent rule as applied to the County, the modifying phrase "associated with the licensed facility" modifies "public safety expenses" only.* (emphasis added). Opinion of the Common Pleas Court at 12–13.

18. In fact, the General Assembly provided for a mechanism to disburse any excess revenue remaining at the end of the fiscal after the municipal grants are applied to defray the costs associated with Presque Isle Downs. The fourth sentence of Section 1403(c)(2)(v) of the Gaming Act provides that Appellants may disburse the excess to any municipality in the county to fund a wide range of projects.

19. 53 Pa.C.S. § 2302 defines the term "local government" as "[a] county, city of the second class, second class A and third class, borough, incorporated town, township, school district or any other similar general purpose unit of government created by the General Assembly after July 12, 1972."

mental agreement concerning gaming revenues with any other municipality and then adopted an ordinance. Also, a review of Erie County Ordinances Nos. 165, 166, and 167 of 2007 indicates that there is no requirement that an applicant enter into an intergovernmental cooperative agreement with Erie County before it could receive a grant from the restricted gaming revenue. Essentially, Erie County believes that it can enter into intergovernmental agreements with other municipalities and distribute the money without restrictions. This cannot done without first complying with 53 Pa.C.S. §§ 2305 and 2315.

### B. Section 1403(c)(2)(ix) of the Gaming Act, 4 Pa.C.S. § 1403(c)(2)(ix).

Section 1403(c)(2)(ix) of the Gaming Act provides that "[n]othing in this paragraph shall prevent any of the above counties which directly receive a distribution under this section from entering into intergovernmental cooperative agreements with other jurisdictions for sharing this money."

Appellants contend that Section 1403(c)(2)(ix) of the Gaming Act "trumps" Section 1403(c)(2)(v) of the Gaming Code and as a result there is no limitation on how Erie County can use the funds that it receives. In other words, Appellants suggest that if there is any limitation in Section 1403(c)(2)(v) of the Gaming Act concerning "restricted funds", it may circumvent that limitation by entering into an intergovernmental cooperative agreement. This statutory construction produces an absurd result.

**First,** Section 1403(c)(2)(ii)(D) of the Gaming Act, 4 Pa.C.S. § 1403(c)(2)(ii)(D), expressly provides that the "restricted" gaming revenue *must* be used "for the purpose of municipal grants."

**Second,** Section 1403(c)(2)(v) of the Gaming Act, 4 Pa.C.S. § 1403(c)(2)(v), expressly provides that the money received

for municipal grants "shall be used to fund the costs of human services, infrastructure improvements, facilities, emergency services, health and public safety expenses associated with licensed facilities."

**Third,** Appellants position that notwithstanding these statutory restrictions it may enter into an intergovernmental agreement with other municipalities to share the money makes no sense when the General Assembly established a specific framework for the use of "restricted" gaming revenue.

**Fourth,** the common pleas court recognized that Appellants have the right under Section 1403(c)(2)(ix) of the Gaming Act to enter into an intergovernmental cooperative agreement. The common pleas court also determined:

> As to the County's argument that it may enter into "intergovernmental cooperative agreements" pursuant to § 1403(c)(2)(ix) and distribute the gaming revenue as it sees fit, STIEDA [Appellee] argues that the agreements are related to unrestricted funds only, which is not before this Court. *However, the Court does not dispute that the County may enter into such agreements, but finds the issue to be mostly irrelevant to the interpretation of § 1403(c)(2)(v). After the issue is settled and the municipal grants are properly awarded as the statute requires, the Court presumes that the County will enter into those agreements it deems necessary.* (emphasis added).

Opinion of the Common Pleas Court at 14.

### VI. Whether Appellants Have Broad Discretion To Limit Municipal Grants Under Section 1403(c)(2)(v) Of The Gaming Act To Not More Than Fifty Percent Of The Projected Cost?

Last, Appellants contend that the common pleas court erred when it found that

Erie County must fund every eligible application for a municipal grant under Section 1403(c)(2)(v) of the Gaming Act without consideration of the relative merits of the application and the amount requested. Specifically, Appellants assert that it has broad discretion over the administration of municipal grants which includes the fifty percent cap on the amount of the municipal grant awarded to an applicant pursuant to Ordinance 167 of 2007.

### A. Authority For Appellants' Position.

The Report of the Erie County Gaming Revenue Committee established Erie County's framework for the distribution of restricted gaming revenue:

. . . .

The Report provides:

### A. Purpose

The purpose of the restricted funds is spelled out in 4 Pa.C.S § 1403(c)(2)(v) of The PA Race Horse Development and Gaming Act PA Act 71 of 2004.

It states the funds "designated for municipal grants within the county shall be used"

1. "to fund grants to the municipality in which the licensed facility is located"

2. "to the county in which the licensed facility is located"

3. "to the municipalities which are contiguous to the municipality in which the licensed facility is located and which are located within the county in which the licensed facility is located".

Number one relates to Summit [Township]. Section two relates to the County of Erie. Number three refers to Millcreek, McKean, Greene and Waterford Townships. . . . The grants are to be *administered* by the county through its economic development authority or redevelopment authority. *Administer* is defined by us as reviewing the applica-tions and making recommendations to the County of Erie. The Committee recommends the formation of the Erie County Gaming Revenue Authority to administer the grants. (emphasis in original).

. . . .

Grant awards will be based on the following guidelines:

1. *The gaming funds will provide no more than fifty percent (50%) of the required funds.* (emphasis added).

2. Other funds do not need to be committed prior to application, however, all anticipated funding sources must be identified in the budget. *No gaming funds will be contracted or released until all other funding sources are committed.* (emphasis added).

. . . .

4. Eligible applicants include: Municipalities and public authorities are eligible applicants. Non-profits may be a co-applicant in an application sponsored by a municipality or public authority.

5. The gaming revenue fund is intended to supplement, not replace, local municipal contribution. *It may be used to reduce the local cash match required by federal or state grants by no greater than fifty percent (50%).* (emphasis added).

6. The following features positively contribute to an applicant's review:

a. the importance of the project to the community as identified by master plans, or other official planning documents, and letters of support.

b. The extent to which the project achieves multiple objectives.

c. The economic development impact of the project.

d. Leverage of private investment.

e. The readiness of the project, specifically, the level of commitment of other funds.

f. The track record and capability of the project applicant(s).

Report of the Erie County Gaming Revenue Committee, A. Purpose and C. The Restricted Funds Policy at 1 and 7–8; R.R. at 81a and 87a–88a.

Pursuant to the Erie Gaming Committee's Report, Erie County enacted Ordinance No. 167 of 2007 which provides:

5. *Power of the Authority*

. . . .

(a) To administer municipal grants of restricted funds received by the County of Erie under the provisions of the Gaming Act including grants under the Erie County Revitalization Fund.

(b) To utilize the following guidelines in considering applications for municipal grants:

(1) *Any proposed projects will have secured half or more of their capital budgets from other sources.* (emphasis added).

(2) *No gaming funds will be released unless and until all other funding sources are firmly secured.* (emphasis added).

. . . .

(4) *This gaming revenue fund is not developed to eliminate local match requirements. It may be used to reduce the local match no greater than fifty percent (50%).* (emphasis added).

Ordinance Number 167, 2007, Amending the Administrative Code of Erie County, December 12, 2007, at 3; R.R. at 128.

Appellants contend that Section 1304(c)(2)(v) of the Gaming Act neither states that it must approve all applications for municipal grants submitted to it nor that it may not place limits on the amount of funding for a particular project or use. Because Section 1304(c)(2)(v) of the Gaming Act is silent concerning these considerations, the General Assembly intended that Appellants develop their own procedures for awarding municipal grants and in response Erie County enacted Ordinance 167 of 2007.

B. *Appellees Response To The Report And Ordinance No. 167 of 2007.*

Appellees filed an amended complaint for declaratory judgment and requested that the common pleas court at Count Two declare all "restricted" gaming revenue be used "to fund grant applications which are submitted and appropriate for funding in accordance with § 1403(c)(2)(v) during a fiscal year, even if the funding of those grant applications results in funding more than 50% of the amount requested in any or all of the grant applications." Amended Complaint For Declaratory Judgment, Paragraph 84 at 16; R.R. at 22a. Appellees stress that it sought a limited declaration that the fifty percent funding limit imposed by Ordinance 167 of 2007 was inconsistent with the Gaming Act. Contrary to Appellants' arguments, Appellees emphatically deny that it raised the issue concerning what applications should be considered "appropriate for funding" but, rather, the issue is whether Appellants could legally impose a fifty percent cap on applications appropriate for funding under Section 1403(c)(2)(v) of the Act.[20]

C. *Analysis.*

■ The glaring error in the Erie Gaming Committee Report and Ordinance No.

---

20. Appellees explain:

Summit [Appellees] never contended that Erie County must fund all projects submitted for funding, or that it must fully fund all projects. Obviously, if in a given fiscal year there were [sic] $5 million in restricted gaming revenue available, and there were ten grant applications which were unquestionably entitled to funding and which requested $10 million in funding, Erie County

167 of 2007 is that, first, the applicant is required to secure at least one-half of the funds from some other source. Second, Appellants may impose a fifty percent cap on the applicant's request for an amount certain.[21] These requirements contradict and frustrate the General Assembly's intent that "restricted" municipal grants must first be used to fund the costs associated with a licensed facility pursuant to Section 1403(c)(2)(v) of the Gaming Act. In fact, this Court concurs in the disposition of this issue as determined by the common pleas court:

> The "Restricted Funds Policy" section of the Report limits gaming funds for "no more than fifty percent (50%) of the required funds" for grant awards and states that the gaming funds are "intended to supplement, not replace, local municipal contribution" (pp. 6–9).
>
> . . . .
>
> *STIEDA [Appellants] argued that the County adopted an incorrect interpretation of the Gaming Act . . . relating to the distribution of restricted gaming revenue [and] . . . an arbitrary 50% limit on grant awards . . . .*
>
> STIEDA [Appellants] further argues that the clause "Grants shall be used" is mandatory because of the word "shall." *Koken v. Reliance Ins. Co.*, 586 Pa. 269, 893 A.2d 70, at 86 (2006). *Substituting*

> *"shall" with "must" (a synonym), the sentence reads, "Grants must be used to fund the cost . . . associated with licensed facility operations."*
>
> . . . .
>
> *. . . The specific use of the word "shall" clearly indicates to the Court that the Legislature did not intend the broad discretion that the County [Appellants] [are] actively seeking but instead intended to have grants awarded to the municipalities affected by the establishment of a licensed gaming facility.* (emphasis added and footnote omitted).

Opinion of the Common Pleas Court at 5–6 and 14–15. The common pleas court concluded that "[t]he 50% limit on the award amounts of municipal grants proposed by the County also appears to be another limit on distribution of the gaming funds sought by the County" and that "[s]ince the Court can find no language in the Gaming Act setting such a limit, the Court must conclude that it is arbitrary and should be reconsidered by the County." Opinion of the Common Pleas Court at 15 n. 4.

This Court is unable to discern any error by the common pleas court and affirms the grant of Appellees' motion for judgment on the pleadings.

Accordingly, this Court affirms.

---

[Appellants] would be required to establish some reasonable method, consistent with the Gaming Act, to allocate the monies to fund grants. Summit's [Appellees] concern was and is that Erie County [Appellants] set an arbitrary 50% limit which would apply even when it had sufficient monies to fund more than 50% of the amounts requested in the applications which were "appropriate for funding."
Brief for Appellees at p. 62.

**21.** "For example, if in a given fiscal year there were [sic] $5 million in restricted gam-

ing revenue available to Erie County, and there was only one grant application which was unquestionably entitled to funding and which requested $1 million in funding, Erie County would never award more than $500,000 to that project." Brief of Appellees at p. 61. "At the end of that fiscal year Erie County could then, under the last sentence of § 1403(c)(2)(v), 'uncommit' all the remaining funds, or $4.5 million, and use those monies for purposes other than 'for the purpose of municipal grants.'" Brief for Appellees at p. 61.

## ORDER

AND NOW, this 10th day of August, 2009, the orders of the Common Pleas Court of Erie County in the above-captioned matter is affirmed.

### DISSENTING OPINION BY Judge PELLEGRINI.

The central issue in this appeal is whether under Section 1403(c)(2)(v) of the Gaming Act, 4 Pa.C.S. § 1403(c)(2)(v), the County of Erie can take grants from restricted gaming funds to fund activities in municipalities that are not either the municipality in which the gaming facility is located or contiguous thereto.

Under the Gaming Act, monies are available as either unrestricted or restricted funds. Under Section 1403(c)(2)(ii)(D) of the Gaming Act, 4 Pa.C.S. § 1403(c)(2)(D), restricted gaming revenue must be used for the purposes of municipal grants. Section 1403(c)(2)(v) of the Gaming Act, 4 Pa.C.S. § 1403(c)(2)(v), clarifies how the restricted revenue may be used. That provision provides:

> Unless otherwise specified, for the purposes of this paragraph money designated for municipal grants within a county, other than a county of the first class, in which a licensed **facility is located shall be used to fund grants to the municipality in which the licensed facility is located, to the county in which the licensed facility is located and to the municipalities which are contiguous to the municipality in which the licensed facility is located and which are located within the county in which the licensed facility is located.** Grants shall be administered by the county through its economic development or redevelopment authority in which the licensed facility is located. **Grants shall be used to fund the costs of human services, infra**structure improvements, facilities, emergency services, health and public safety expenses associated with licensed facility operations. If at the end of a fiscal year uncommitted funds exist, the county shall pay to the economic development or redevelopment authority of the county in which the licensed facility is located the uncommitted funds.** (Emphasis added.)

Under this provision, as long as a cost relates to the human services, infrastructure improvement, facilities, emergency services, health and public safety expenses associated with the effects of the gaming facility, direct grants to address those concerns can be made from unrestricted gaming funds to the host municipality, contiguous municipalities and to the county itself. Obviously, a grant made to the county would be to an entity whose territory encompasses more than merely the host and contiguous municipalities.

The question then is whether the county may apply for a grant from restricted gaming revenues for a purpose that is associated with the effects of a licensed facility that is in a municipality or authority other than the host or contiguous facility—for example, for a road, traffic signals or airport improvements or more bus service, if such a need is caused by gaming traffic. Under the relevant provisions of the Gaming Act, as long as the cost is for one of the above-specified areas and relates to gaming activity, the county has the discretion to decide which grants it wants to fund in a particular year.

There is no question that the county can decide to take those corrective actions because it is eligible for grants from restricted gaming activities. It is also clear that it can take grant monies for those purposes and enter into cooperative agree-

ments with other municipalities or authorities to take corrective action of the sort mentioned above. 4 Pa.C.S. § 1403(c)(2)(ix), a subsection of the above-quoted subsection, provides:

Nothing in this paragraph shall prevent any of the above counties which directly receive a distribution under this section from entering into intergovernmental cooperative agreements with other jurisdictions for sharing this money.

Accordingly, I respectfully dissent from that portion of the opinion upholding the trial court's order that limits spending from initial grants from restrictive gaming revenues to the host municipality and contiguous municipalities.